**HCRA OF TEXAS, INC., d/b/a Heartland Health Care Center–Bedford, Appellant**

v.

**Margie Fay JOHNSTON, Tommy Lloyd Johnston, Gary Wayne Johnston, and Douglas Lee Johnston, Individually and on Behalf of the Estate of Lloyd Thomas Johnston, Deceased, Appellees.**

No. 2–03–321–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 3, 2005.

Fulbright & Jaworski L.L.P., and W. Wendell Hall, and Rosemarie Kanusky, San Antonio, for Appellant.

Noteboom—The Law Firm, and Charles M. Noteboom, and J. Mark Sudderth, Hurst, for Appellees.

J. Mark Sudderth, for Douglas Lee.

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

This is a nursing home liability case. The trial court rendered judgment on the

jury's verdict for Appellees Margie Fay Johnston, Tommy Lloyd Johnston, Gary Wayne Johnston, and Douglas Lee Johnston, individually and on behalf of the estate of Lloyd Thomas Johnston, deceased (collectively Appellees or Johnstons) and against Appellant HCRA of Texas, Inc. The primary issues we address involve the sufficiency of the evidence to support the jury's damage awards and malice finding. Because we hold that legally insufficient evidence exists to support the jury's malice finding, we will reverse the judgment's exemplary damages award and render judgment that Appellees take nothing on their exemplary damages claim. Because the evidence is legally and factually sufficient to support the jury's damage findings, we will affirm the remainder of the trial court's judgment.

## II. Factual Background

Lloyd Thomas Johnston, a seventy-one-year-old man, underwent bypass surgery and, as a result of complications from that surgery, was hospitalized for eighty-four days. During this time a feeding tube, a J-tube, assisted in feeding Lloyd. Lloyd was steadily recovering but needed additional rehabilitation. On May 21, 1999, the hospital discharged Lloyd to HCRA for rehabilitation.

Lloyd had colonized MSRA when he was admitted to HCRA.[1] Lloyd initially made progress at HCRA. According to Lloyd's son, HCRA employees worked well with Lloyd and provided successful physical therapy rehabilitation to Lloyd; the family saw an improvement in Lloyd's mobility and strength about every two days. But around June 10, 1999, after approximately three weeks at HCRA, Lloyd's health took a turn for the worse. On June 15th, after

twenty-five days at HCRA, Lloyd's condition had severely deteriorated; Dr. Aziz Klavon ordered Lloyd transferred immediately by ambulance to the hospital emergency room. Lloyd died less than twenty-four hours later. Lloyd's death certificate indicates that he died of multi-system organ failure secondary to sepsis, septic shock. Lloyd's death certificate listed ischemic colitis as a tertiary cause of death. Lloyd's family and experts presented evidence that at HCRA Lloyd was not properly cleaned or repositioned—causing him to develop decubitus ulcers, he was not properly nourished, he was not given his medicines, his urine output and body temperature were not measured, his room was not cleaned, and HCRA kept inadequate records and fabricated some records.

Appellees explain that their theory of the case at trial was that HCRA injured Lloyd "by, among other things, allowing the formation of decubitus ulcers, causing serious infection, and knowingly allowing [Lloyd] to lie unattended in his own excrement." HCRA's theory of the case was that Lloyd's sepsis and death were the result of a new and independent cause—ischemic colitis.

## III. Procedural Background

The negligence special question submitted to the jury was segregated into two subparts: did HCRA's negligence proximately cause *injuries* to Lloyd and did the negligence of HCRA proximately cause the *death* of Lloyd. The trial court also gave the jury an instruction on new and independent cause. The jury determined that HCRA's negligence did proximately cause injuries to Lloyd and determined that $17,805 for medical expenses and $75,000

1. MSRA is Methicillin Resistant Staphyloccus Aureus, a type of bacteria that can "colonize" or exist in a person without causing an infec-tion; it is not uncommon in patients in hospitals or nursing homes.

for physical pain and mental anguish would have fairly and reasonably compensated him for those injuries. The jury also found that HCRA's alleged negligence did not proximately cause Lloyd's death and, consequently, the jury did not answer any of the wrongful death damages questions.

The jury further found that HCRA's director of nursing, Margie Burns, was employed by HCRA in a managerial capacity and was acting in the scope of that capacity when she acted with malice, causing harm to Lloyd. The jury found that $1,000,000 in punitive damages should be assessed against HCRA. The trial court declined to apply the statutory punitive damages cap, concluding that Lloyd's estate's claims fell within the injury-to-the-elderly exception to the cap. The trial court overruled all post-verdict motions and rendered judgment on the jury's verdict.

## IV. STANDING

In its first issue, HCRA asserts that Appellees did not establish standing to bring a survival action on behalf of Lloyd's estate. Since HCRA filed its appellate brief in this case, the Texas Supreme Court decided *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 48 Tex. Sup.Ct. J. 624, 624–30, 2005 WL 1124764, at *4 (Tex. May 13, 2005) and *Lorentz v. Dunn*, 171 S.W.3d 854, 856, 48 Tex. Sup. Ct. J. 630, 630–32 (Tex. 2005). In both *Lovato* and *Lorentz* the supreme court recognized that, in a survival action, the decedent's estate has a justiciable interest in the controversy sufficient to confer standing. *Lovato*, 171 S.W.3d at 849–50; *Lorentz*, 171 S.W.3d at 856. Because the pleadings in this case alleged that HCRA's negligent conduct injured Lloyd, his estate had standing to pursue the present claim. *See Lovato*, 171 S.W.3d at 49–50; *Lorentz*, at 856.

HCRA also claims that Appellees did not prove that they were Lloyd's heirs and that no administration of his estate was pending or necessary. This contention does not, however, present an issue of standing. This issue is "more appropriately characterized as one of capacity." *Lovato*, 171 S.W.3d at 848–49. Unlike standing, which may be raised for the first time on appeal, a challenge to a party's capacity must be raised by a verified pleading in the trial court. *Id.;* TEX.R. CIV. P. 93(1)-(2). Because HCRA did not challenge Appellees' capacity to sue for survival benefits in the trial court, its complaint that Appellees failed to prove their legal authority to bring a survival action is waived. *See generally* TEX.R.APP. P. 33.1 (discussing prerequisites for preserving a complaint for appellate review). Accordingly, we overrule HCRA's first issue.

## V. INTEREST

HCRA complains in its eighth and ninth issues that the judgment contains an incorrect starting date for, and rate of, prejudgment interest as well as an incorrect postjudgment interest rate. The trial court signed the judgment in this case on August 14, 2003. The judgment awards $37,122 in prejudgment interest on the survival damages found by the jury and awards postjudgment interest at the rate of ten percent per annum, compounded annually on the total judgment.

We first address HCRA's complaint concerning the date on which prejudgment interest began to run. HCRA argues that the judgment appears to calculate prejudgment interest from June 15, 1999, the date Lloyd was transported to the hospital emergency room, but "[t]here is no way to determine from the face of the judgment how this award was calculated." HCRA, as the appellant, bears the burden of establishing error occurred in the trial court and that the error probably caused rendi-

tion of an improper judgment. *See* TEX. R.APP. P. 44.1(a). Prejudgment interest is required in certain cases, including a personal injury case. *See* TEX. FIN.CODE ANN. § 304.102 (Vernon Supp.2004–05). Lloyd's estate, through Lloyd's heirs, brought a personal injury action and recovered personal injury damages,[2] but HCRA does not propose or suggest any alternative date on which prejudgment interest should properly have begun to run. Nor does HCRA set forth any interest computations alleging or demonstrating that the judgment's award is incorrect.[3] HCRA points out that the judgment does not explain its computation of prejudgment interest nor indicate the date on which prejudgment interest began to run; we hold that HCRA's mere assertion that the computation is incorrect does not establish trial court error. We overrule this portion of HCRA's eighth issue.

■ The balance of HCRA's eighth and ninth issues challenge the judgment's ten percent postjudgment interest award. HCRA argues that House Bill 2415's amendments[4] to the finance code apply to this case so that the postjudgment interest rate should be five percent.[5] HCRA did not raise a complaint about the judgment's interest rate or argue the applicability of House Bill 2415 in any timely filed postjudgment motion. HCRA timely filed a motion for new trial, and in the alternative,

a suggestion for remittitur and a motion for judgment notwithstanding the verdict. But neither of these documents challenged the interest rate utilized in the judgment or argued that the amendments to the finance code effectuated by House Bill 2415 were applicable. HCRA did raise the interest issue in a supplemental motion for new trial, but the supplemental motion was not timely filed—it was filed forty-seven days after the judgment was signed—so it is a nullity and preserves nothing for our review. *See* TEX.R. CIV. P. 329b(a), (b) (requiring motion for new trial and amended motion for new trial to be filed within thirty days of date of judgment); *Moritz v. Preiss,* 121 S.W.3d 715, 720 (Tex.2003) (holding untimely filed amended motion for new trial is a nullity for purposes of preserving issues for appellate review); *Pringle v. Moon,* 158 S.W.3d 607, 612 n. 2 (Tex.App.-Fort Worth 2005, no pet.) (holding argument that House Bill 2415's effective date applied instead of House Bill 4's effective date was waived if not raised in trial court). Consequently, the postjudgment interest arguments set forth in the balance of HCRA's eighth issue and in its ninth issue are not preserved for our review. We overrule those issues.

## VI. SUFFICIENCY OF THE EVIDENCE

In its second, third, and fourth issues, respectively, HCRA challenges the legal

---

2. A decedent's personal injury action survives death and may be prosecuted on his or her behalf. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.021(a) (Vernon 1997).

3. Likewise, neither HCRA's postjudgment motions in the trial court nor its arguments at the hearings on these motions provide this information.

4. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 676, § 2(a), 2003 Tex. Gen. Laws 2096, 2097 (effective date June 20, 2003) (amending TEX. FIN.CODE ANN. § 304.003(c) (Vernon Supp. 2004–05)).

5. During the regular 2003 legislative session, the legislature passed House Bills 4 and 2415, both of which contained nearly identical amendments to the finance code that effectively reduced the postjudgment interest rate from ten to five percent. But House Bill 4 had an effective date of September 1, 2003 while House Bill 2415 had an effective date of June 20, 2003. *See id.* and Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.04, 2003 Tex. Gen. Laws 862, 862 (effective date Sept. 1, 2003) (effectuating same amendment to TEX. FIN.CODE ANN. § 304.003(c)).

and factual sufficiency of the evidence to support the jury's finding that HCRA's negligence proximately caused an injury to Lloyd, the jury's economic and noneconomic damage awards, and the jury's finding that the harm to Lloyd resulted from malice attributable to HCRA.

### A. Standards of Review

#### 1. Legal Sufficiency

In determining a "no evidence" issue we are to consider only the evidence and inferences that tend to support the finding of the disputed fact—unless a reasonable juror could not give credit to such evidence or inferences. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We are to disregard all evidence and inferences to the contrary to the disputed fact—unless a reasonable juror could not disregard such evidence or inferences. *Id.* But we are not to weigh the evidence or make our own credibility determinations. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

#### 2. Factual Sufficiency

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821,

823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

#### 3. Legal Sufficiency Challenge in Light of Clear and Convincing Evidence Burden of Proof

The Texas Supreme Court recently clarified the appellate standards of review to be applied to a legal sufficiency challenge in light of the clear and convincing burden of proof. *Accord In re J.F.C.,* 96 S.W.3d 256, 264–68 (Tex.2002) (discussing legal sufficiency review in termination of parental rights appeal). A legal sufficiency review of a finding required to be based on clear and convincing evidence must take into consideration whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the matter required to be established by clear and convincing evidence. *Id.; see also Kroger Tex. Ltd. P'ship v. Suberu,* 113 S.W.3d 588, 601 (Tex.App.-Dallas 2003, pet. granted) (applying standards of review enunciated in *J.F.C.* to legal sufficiency challenge to evidence of malice). We are to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.,* 96 S.W.3d at 266.

### B. The Jury's Finding that HCRA's Negligence Proximately Caused Injuries to Lloyd

Dr. Klavon was the medical director at HCRA during Lloyd's stay there. Dr. Klavon testified that Lloyd was admitted to HCRA after bypass surgery for two to three weeks of rehabilitation. Lloyd steadily improved during his first two to

three weeks at HCRA; however, Lloyd then became sick, experiencing vomiting and diarrhea.

Margie Burns, the director of nursing at HCRA, testified that Lloyd was taking the medicine Lasix and that it was important to monitor the fluid input and output of a patient on Lasix because Lasix is a diuretic that can contribute to dehydration. Dr. Richard Thorner likewise testified that Lasix may contribute to dehydration, especially in a patient with diarrhea. Dr. Gunda Kirk and Dr. David Stump testified that because Lloyd had a feeding tube and a catheter, it should have been very simple for the HCRA nurses to measure his fluid input and output and to keep him hydrated and nourished. Nurse Burns testified that the standard of care required HCRA's nurses and nurses' aides to keep a patient nourished and hydrated and to chart a patient's fluid input and output. She admitted Lloyd's fluid input and output were not properly charted as required by the standard of care. Dr. Klavon testified that Lloyd was not well nourished[6] when he left HCRA and was dehydrated.

Lloyd's family testified that they visited Lloyd daily at HCRA and that they did not see the nurses move or reposition Lloyd. Lloyd's youngest son testified that after Lloyd became sick and developed diarrhea, he would ring for the nurses, but they would not come; they left him laying in his feces. Toward the end of Lloyd's stay at HCRA, Lloyd's family observed two ulcers on Lloyd's back, behind his hip bones. HCRA's records concerning Lloyd do not document the existence of, or any care or treatment for, these ulcers. When Lloyd was transferred by ambulance on June 15, 1999 to the hospital emergency room, physicians documented two stage three decu-

bitis ulcers on Lloyd's back. The ulcers were necrotic and oozing blood. Dr. Kirk testified that decubitus ulcers are completely preventable if the patient is repositioned every two hours. The standard of care is to reposition a patient who cannot turn himself every two hours; if the HCRA nurses had repositioned Lloyd, Dr. Kirk would have expected him to not have any ulcers.

Thus, the evidence and inferences tending to support the jury's finding that HCRA's negligence proximately caused injuries to Lloyd—malnourishment, dehydration, and decubitus ulcers—that could have been given credit by reasonable jurors includes expert testimony that the standard of care requires that patients who are unable to reposition themselves be repositioned every two hours, that decubitus ulcers do not develop if the repositioning demanded by the standard of care occurs, that it should have been easy for HCRA to keep Lloyd adequately nourished and hydrated because he had a feeding tube, that the standard of care requires patients be adequately hydrated and nourished, and that Lloyd was not adequately nourished or hydrated when he left HCRA. Also, Lloyd's family members observed decubitus ulcers on Lloyd's lower back while Lloyd was at HCRA; hospital emergency room records document that Lloyd had two stage three decubitus ulcers on his back when he arrived at the emergency room on June 15, 1999.

The contrary evidence and inferences— Nurse Burns's denial that Lloyd's ulcers were present when he left HCRA, her incredible testimony that it was possible the decubitus ulcers occurred during the ten-minute ride to the hospital emergency

---

**6.** Blood tests documented a decline in Lloyd's nutritional status; he was "malnourished," not getting enough calories so that his body was breaking down its own muscle to satisfy its caloric needs.

room although she had never seen such a phenomenon, and an unsigned note in Lloyd's chart that a nurse asked him to roll over one night and he refused—could have been disregarded by a reasonable juror. We hold that the evidence is legally sufficient to support the jury's finding that HCRA's negligence proximately caused injuries to Lloyd. *See City of Keller*, 168 S.W.3d at 827; *Bradford*, 48 S.W.3d at 754. Moreover, considering all of the evidence, the evidence supporting the jury's finding that HCRA's negligence proximately caused injuries to Lloyd is not so weak nor is the evidence to the contrary, set forth above, so overwhelming that the jury's answer should be set aside and a new trial ordered. *See Garza*, 395 S.W.2d at 823. We overrule HCRA's second issue.

## C. The Jury's Economic and Noneconomic Damage Awards

The jury found that the reasonable expense of the necessary medical and hospital care Lloyd received before his death as a result of his injuries was $17,805. The jury further found that $75,000 would fairly and reasonably compensate Lloyd for the physical pain and mental anguish he experienced before his death as a result of his injuries. In its third issue, HCRA claims that legally and factually insufficient evidence exists to support either of these damage awards.

▇▇▇ HCRA claims that the evidence is legally and factually insufficient to support the jury's award of $17,805 in medical expenses because the jury did not segregate the damages caused by HCRA's negli-gence from the medical costs that would have accrued without HCRA's negligence—the medical expenses related to Lloyd's ischemic colitis.[7] The billing records from the hospital following Lloyd's June 15, 1999 transfer were submitted pursuant to Texas Civil Practice and Remedies Code section 18.001. *See* Tex. Civ. Prac. & Rem.Code Ann. § 18.001 (Vernon 1997). The total amount of Lloyd's hospital bill from June 15, 1999 until his death on June 16, 1999 was $17,190.85. The records establish that Lloyd stayed in the hospital ICU one night before he died; that he was treated for dehydration,[8] malnutrition, and decubitus ulcers; and that blood work and other tests were performed. No evidence exists that this treatment and these tests were necessitated by ischemic colitis.[9] In fact, Lloyd was not diagnosed with ischemic colitis until it was noted on his death certificate after an autopsy.

▇▇▇ It is true that a plaintiff may not force a defendant to pay his medical expenses for treatment of a pre-existing condition not caused by the defendant's negligence. *See Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997) (holding plaintiff may recover only for medical expenses from treatment made necessary defendant's negligence where differentiation is possible between treatment made necessary by defendant and treatment for pre-existing conditions). Here, however, the jury found that the purported pre-existing injuries—that is, dehydration, malnutrition, and decubitus ulcers—were proximately caused by

---

7. HCRA does not argue that the treatment Lloyd received was not necessary or that the hospital's charges were not reasonable.

8. One of the nurses at the hospital told Doug Johnston that, "we've got him [Lloyd] pumped full of fluids."

9. HCRA's theory of the case, which the jury apparently believed because it refused to find that HCRA's negligence caused Lloyd's death, was that Lloyd died from ischemic colitis, a cause of death independent from any negligence by HCRA.

HCRA's negligence. *Accord Linan v. Rosales,* 155 S.W.3d 298, 306 (Tex.App.-El Paso 2004, pet. denied) (recognizing defendant not responsible for costs associated with pre-existing cancer but only for increased costs necessitated by alleged negligent delay in diagnosis). We overrule the portion of HCRA's third issue challenging the jury's damage award for $17,805 in medical expenses.[10]

■ Next, HCRA contends that legally and factually insufficient evidence exists to support the jury's award of $75,000 to Lloyd's estate for the physical pain and mental anguish he suffered prior to his death. Lloyd was conscious during his entire stay at HCRA. Mr. Hunter Mack Baldridge, the administrator at HCRA, testified that he has seen decubitus ulcers and that they are nasty and look painful. The emergency room personnel documented Lloyd's two decubitus ulcers as stage three, neucrotic, and oozing blood. Lloyd's family members testified that Lloyd complained that his back hurt him.

■ The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Dollison v. Hayes,* 79 S.W.3d 246, 249 (Tex.App.-Texarkana 2002, no pet.). The presence or absence of pain, either physical or mental, is an inherently subjective question. *Id.* No objective measures exist for analyzing pain and suffering damages. *See Hicks v. Ricardo,* 834 S.W.2d 587, 591 (Tex.App.-Houston [1st Dist.] 1992, no writ). Once the existence of some pain and suffering has been established, however, there is no objective way to measure the adequacy of the amount awarded as compensation. *Dawson v. Briggs,* 107 S.W.3d 739, 751 (Tex. App.-Fort Worth 2003, no pet.).

■ A party may establish the existence of conscious pain and suffering by circumstantial evidence. *Borth v. Charley's Concrete Co.,* 139 S.W.3d 391, 395 (Tex.App.-Fort Worth 2004, pet. denied); *Landreth v. Reed,* 570 S.W.2d 486, 492 (Tex.Civ.App.-Texarkana 1978, no writ). Pain and suffering may be inferred or presumed as a consequence of severe injuries. *Borth,* 139 S.W.3d at 395; *City of Austin v. Selter,* 415 S.W.2d 489, 501 (Tex. Civ.App.-Austin 1967, writ ref'd n.r.e.). The duration of the pain and mental anguish is an important consideration. *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 250 (Tex.App.-Texarkana 2005, no pet.). The jury is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering. *Texarkana Mem'l Hosp.,* 946 S.W.2d at 841; *Dollison,* 79 S.W.3d at 249. Despite this broad discretion, there must "be some evidence to justify the amount awarded," as a jury "cannot simply pick a number and put it in the blank." *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996).

■ As long as sufficient probative evidence exists to support the jury's verdict, neither the reviewing court nor the trial court is entitled to substitute its judgment for that of the jury. *Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex. 1987); *J. Wigglesworth Co. v. Peeples,* 985 S.W.2d 659, 665 (Tex.App.-Fort Worth 1999, pet. denied). A verdict will be set aside on appeal only where the record clearly indicates that the award was based

---

10. Although HCRA's issue is framed as a legal and factual sufficiency issue, its brief makes no factual sufficiency challenge to the jury's medical expenses award. We have addressed HCRA's only briefed issue: That the medical expenses were required to be segregated but were not.

on passion, prejudice, or improper motive, or is so excessive as to shock the conscience. *Transit Mgmt. Co. of Laredo v. Sanchez,* 886 S.W.2d 823, 826 (Tex.App.-San Antonio 1994, no writ); *Weingarten, Inc. v. Gauthier,* 305 S.W.2d 181, 197 (Tex. Civ.App.-Beaumont 1957, no writ).

HCRA's challenge to the jury's physical pain and mental anguish award is limited to three sentences and simply claims that the record is devoid of any evidence that Lloyd suffered pain or anguish. Lloyd's family saw the decubitus ulcers on Lloyd's back, which medical records and expert testimony established were stage three, necrotic, and oozing blood. Lloyd, who was fully conscious, complained to his family that his back hurt, indicating he was experiencing physical pain. Further, Lloyd was malnourished, causing his body to break down muscle to meet its caloric needs. The jury could have reasonably inferred from this evidence that Lloyd experienced physical discomfort, pain, and suffering from the injuries that the jury found proximately caused by HCRA. *See City of Keller,* 168 S.W.3d at 827; *Bradford,* 48 S.W.3d at 754. We overrule the portion of HCRA's third issue challenging the legal sufficiency of the evidence to support the jury's damage award of $75,000 for physical pain and mental anguish.

■ We now turn to the factual sufficiency challenge. Even though each case must be judged on its own unique facts, it is proper to consider other approved awards in similar cases to determine if an award for pain and suffering is excessive. *SunBridge Healthcare Corp.,* 160 S.W.3d at 250. In *SunBridge,* the court held that an award of one million dollars was not excessive to compensate the plaintiff for physical pain and mental anguish suffered from injuries sustained in falls. *Id.* In *Cresthaven Nursing Residence v. Free-*

*man,* the court held that an award of one million dollars—remitted down from four million dollars—was not excessive to compensate the plaintiff for physical pain and mental anguish suffered from two broken legs sustained in a fall. 134 S.W.3d 214, 228–232 (Tex.App.-Amarillo 2003, no pet.). In *Guzman v. Guajardo,* the court held that an award of six hundred thousand dollars was not excessive to compensate a young boy who endured fifteen minutes of pain sustained in a car accident before dying. 761 S.W.2d 506, 512 (Tex.App.-Corpus Christi 1988, writ denied). Having thoroughly reviewed the record and applying the appropriate standard of review, we conclude that the evidence is factually sufficient to support the jury's damage award of $75,000 for Lloyd's physical pain and mental anguish. We overrule HCRA's third issue.

## D. The Jury's Finding that the Harm to Lloyd Resulted From Malice Attributable to HCRA

■ Special question number 7 of the court's charge asked the jury whether it found by clear and convincing evidence that the harm to Lloyd resulted from malice attributable to HCRA. The charge then defined clear and convincing evidence and malice and instructed the jury that in order for malice to be attributable to HCRA it must find that Nurse Burns was employed by HCRA in a managerial capacity and was acting in the scope of that capacity. The charge explained that

"**Malice**" means an act or omission by [Nurse] Burns:

(a) which, when viewed objectively from the standpoint of [Nurse] Burns at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b) of which [Nurse] Burns had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.[11] The jury answered "yes" to special question number 7.

Experts testified that decubitus ulcers are preventable if the patient is repositioned every two hours and that the standard of care requires such repositioning if the patient is unable to reposition himself. Expert testimony established that the existence of a J-tube does not prevent a patient from rolling onto his stomach or from sleeping on his stomach. And although Lloyd's mobility and strength initially improved at HCRA, at some point he became incapable of repositioning himself. Lloyd's family members testified that in the last week of Lloyd's stay at HCRA they noticed two ulcers on his lower back. Lloyd's hospital records establish that upon admission from HCRA he had two stage three, necrotic, decubitus ulcers that were oozing blood. And HCRA's records do not document the existence of, or any care for, these ulcers. Based on this evidence, Appellees argue that HCRA "either ignored [Lloyd's] worsening injuries or falsely claimed to have examined him when it did not" and that "such evidence is sufficient to support the jury's conclusion that [HCRA] acted with conscious indifference to the rights of [Lloyd] despite awareness of an extreme risk of serious harm."

■■■ Generally, the definition of malice under civil practice and remedies code section 41.001(7)(B) consists of two components: one objective and one subjective. *See Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 854 (Tex.App.-Fort Worth 2003, pet. de-

nied). Objectively, the defendant's conduct must involve an extreme risk of harm, a significantly higher threshold than the objective reasonable person test for negligence. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex.1994). To satisfy the objective malice prong, the defendant's conduct must, viewed objectively from the actor's standpoint, involve an extreme degree of risk. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001). "Extreme risk" means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *Id.* Subjectively, the defendant must have actual awareness of the extreme risk created by the conduct. *Id.* Evidence of simple negligence is not enough to prove either the objective or subjective components of malice. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998).

The evidence concerning HCRA's breach of the standard of care by failing to reposition Lloyd or to notice or treat his decubitus ulcers after his health took a turn for the worse during his last seven to ten days at HCRA is not, standing alone, evidence of the type of acts or omissions that, viewed from the actor's standpoint, pose "an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Compare Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 642 (Tex.1995) (holding failure to adequately protect road worker from specific hazards, including the pothole in the road, did not create "likelihood of serious injury" required to satisfy objective gross negligence prong) *with Lee Lewis Constr., Inc.*, 70 S.W.3d at 786 (holding obvious risk of death from falling ten stories was extreme

---

11. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 13.02, sec. 41.001(7)(B)(I), 2003 Tex. Gen. Laws 887, 887 (amended 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7) (Vernon Supp.2004–05)).

risk and satisfied objective gross negligence prong); *Mobil Oil Corp.*, 968 S.W.2d at 922–23 (holding known probability of suffering leukemia from benzene exposure was extreme risk and satisfied objective gross negligence prong); *Columbia Med. Ctr. of Las Colinas*, 122 S.W.3d at 855 (holding known risk that administration of drug to person with decedent's condition was contraindicated and could be lethal was extreme risk and satisfied objective malice prong); *Sears, Roebuck & Co. v. Kunze*, 996 S.W.2d 416, 428 (Tex.App.-Beaumont 1999, pet. denied) (holding evidence of reported amputations and other severe injuries occurring when consumers used defendant's radial saw that lacked lower blade guard constituted evidence of extreme risk and satisfied objective gross negligence prong). Here, the evidence presented does not demonstrate that, viewed objectively from the standpoint of Nurse Burns, the acts or omissions upon which Appellees premise their exemplary damages claim posed an "extreme degree of risk" to Lloyd.[12] *See Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 374 (Tex.2004) (recognizing that conduct, although extreme and outrageous, did not expose plaintiff to extreme risk of substantial harm). Viewing all the evidence in the light most favorable to the jury's malice finding, we hold that a reasonable trier of fact could not have formed a firm belief or conviction that from Nurse Burns's standpoint the risk presented to Lloyd was an extreme risk of serious injury. *See J.F.C.*, 96 S.W.3d at 266. Therefore, we sustain HCRA's fourth issue.

Because we sustain HCRA's fourth issue and hold that the evidence is legally insufficient to support the jury's malice finding, we need not address HCRA's fifth issue challenging the legal and factual sufficiency of the evidence to support the $1,000,000 exemplary damages award, HCRA's sixth issue alleging that the trial court erred by refusing to apply the statutory exemplary damages cap,[13] or HCRA's seventh issue alleging that the $1,000,000 exemplary damages award is unconstitutional and grossly excessive. *See* TEX. R.APP. P. 47.1.

## VII. CONCLUSION

Having sustained HCRA's fourth issue, we reverse the judgment's award of exemplary damages and render judgment that Appellees take nothing on their exemplary damages claim. Having overruled

---

**12.** We do not hold that the failure to recognize and treat decubitus ulcers may never constitute an extreme risk of serious injury. We simply hold that no evidence exists that the approximately ten-day failure to do so in this case constituted an extreme risk of serious injury.

**13.** Appellees asserted that the injury-to-an-elderly-individual exception to the cap applied here, but no jury question was submitted other than the malice question. *See* Act of April 20, 1995, 74th Leg. R.S., ch. 19, § 46, 1995 Tex. Gen. Laws 108, 113, *amended by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 13.06, sec. 41.008(c)(7), 2003 Tex. Gen. Laws 847, 888–89 (amended to add "but not if the conduct occurred while providing health care as defined by Section 74.001") (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(c)(7) (Vernon Supp.2004–05)). We are doubtful that the jury's malice finding alone triggers the injury-to-an-elderly-individual exception to the cap, especially because the charge did not define malice as "a specific intent by the defendant to cause substantial injury to the claimant." *See Signal Peak Enters. of Tex., Inc. v. Bettina Inv., Inc.*, 138 S.W.3d 915, 927 (Tex.App.-Dallas 2004, pet. stricken); *see also Mission Res., Inc. v. Garza Energy Trust*, 166 S.W.3d 301, 315–16 (Tex. App.-Corpus Christi 2005, pet. filed) (holding exemplary damage cap inapplicable where jury made specific finding beyond reasonable doubt that defendant had committed felony theft). However, in our disposition of the appeal, we do not reach this issue.

HCRA's other issues, we affirm the remainder of the trial court's judgment.