

NUMBER 13-11-00639-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RODWICK TERRENCE SMITH,                                    Appellant,

v.

WRANDALL CARTER,                                              Appellee.

On appeal from the 58th District Court
of Jefferson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellee, Wrandall Carter, sued appellant, Rodwick Terrence Smith, for personal injuries sustained in an automobile collision. Smith stipulated to ordinary negligence and to Carter's past medical expenses in the amount of $6,192.50 and future medical expenses in the amount of $2,045.00. Following a bench trial, in addition to the stipulated damages, the trial court awarded Carter $18,500 in damages for past pain,

suffering, and mental anguish; $6,000 for future pain, suffering, and mental anguish; $5,000 for past disfigurement; and $5,000 for future disfigurement. By three issues, Smith challenges: (1) the sufficiency of the evidence to support the trial court's award of $24,500 in past and future mental anguish damages; (2) the $24,500 mental anguish damages award as excessive; and (3) the trial court's finding that Smith failed to prove that Carter was contributorily negligent by not wearing a seat belt at the time of the accident. We affirm.

## I. BACKGROUND

At the time of the accident, Carter was a nineteen-year-old student in Beaumont, Texas. She was a passenger in a vehicle driven by her friend, Marvin Payne. Smith, an unlicensed driver,[1] admitted at trial that he was at fault for entering an intersection from a stop sign without seeing Payne's vehicle.[2] Upon impact, Carter sustained lacerations to her forehead when she "starburst" the windshield, shattering the inside glass of the windshield. After the accident, Carter was placed in a neck and spinal brace and taken by EMS to a hospital emergency room, where she received stitches to the lacerations on her forehead, and was released.

Carter testified that as a result of the accident, she experienced pain in her neck and lower back and headaches. She was treated at Beaumont Back and Neck Clinic for several months for these conditions. At the time of trial, approximately fourteen months after the accident, Carter stated that she continued to experience pain. Carter consulted a plastic surgeon regarding the scar on her forehead; she was advised that

---

[1] Smith drove a car owned by his girlfriend, Inniercia Lomax. Carter alleged claims of negligent entrustment against Lomax, but the trial court found there was no negligent entrustment. Lomax is not a party to this appeal.

[2] Smith was given citations for driving with an invalid license and failure to yield right-of-way in connection with the accident.

2

she should undergo surgery to remove some glass fragments that remained embedded in her forehead. Four months after the accident, Carter visited a psychologist, James A. Duncan, Ph.D., who diagnosed her with mild post-traumatic stress syndrome.

At the conclusion of the trial, the trial court announced the following findings in open court: (1) Smith was, as stipulated, found liable for negligence, but the court found no gross negligence or negligent entrustment; (2) Smith did not establish that Carter was not wearing her seat belt; (3) the court awarded the stipulated past and future medical damages; (4) the court awarded $18,000 in damages for past pain, suffering, and mental anguish and $6,000 for future pain, suffering and mental anguish; and (5) the court awarded $5,000 in damages for past disfigurement and $5,000 for future disfigurement.

Smith filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Smith contends the evidence was legally and factually insufficient to support the trial court's award of $24,500 in past and future mental anguish damages. Smith argues that there was no evidence presented as to the nature, duration, and severity of Carter's alleged mental anguish and no evidence that the injuries caused a substantial disruption in Carter's daily routine.

### A. Standard of Review and Applicable Law

In conducting a legal-sufficiency analysis, we review all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, to determine whether there is more than a scintilla of evidence to support the challenged finding. *City of Keller v. Wilso*n, 168 S.W.3d 802, 822 (Tex.

3

2005). Without acting as a trier of fact, we must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we will set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

To support an award of mental anguish damages, the plaintiff's evidence must describe "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)). The Texas Supreme Court has held that "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Id.* (quoting *Parkway*, 901 S.W.2d at 445; citing *Brown v. Sullivan*, 71 Tex. 470, 476, 10 S.W. 288, 290 (1888) ("Where serious bodily injury is inflicted involving fractures, dislocations, etc., and [which] results in protracted disability and confinement to bed, we know that some degree of physical and mental suffering is the necessary result.")). Furthermore, to support an award for future mental anguish, a plaintiff must demonstrate "a reasonable probability" that he or she will "suffer compensable mental anguish in the future." *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008).

4

"'The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss.'" *Figueroa v. Davis*, 318 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.)). "'Once the existence of some pain, mental anguish and disfigurement has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact finder.'" *Id.* (quoting *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80, (Tex. App.—Corpus Christi 1992, writ denied)). "'The amounts of damages awarded for pain and suffering and disfigurement are necessarily speculative and each case must be judged on its own facts.'" *Id.* (quoting *Perez*, 840 S.W.2d at 80–81); *see also Marvelli v. Alston*, 100 S.W.3d 460, 482 (Tex. App.—Fort Worth 2003, pet. denied) ("Matters of past and future physical pain, mental anguish, and physical impairment are particularly within the jury's province. Therefore, as long as sufficient probative evidence exists to support the jury's verdict, neither the reviewing court nor the trial court is entitled to substitute its judgment for that of the jury.") (citations omitted). A plaintiff is not required to testify about a specific amount of damages in order to obtain a verdict for physical pain and mental anguish. *See Baylor Med. Plaza Servs. Corp. v. Kidd*, 834 S.W.2d 69, 78 (Tex. App.—Texarkana 1992, writ denied).

## B. Discussion

Smith contends that Carter failed to provide any evidence showing: (1) a high degree of mental pain beyond mere embarrassment, anxiety, or disappointment; (2) the

5

nature and duration of the mental pain; and (3) that her daily routine was substantially disrupted by the mental pain. *See Parkway*, 901 S.W.2d at 444.

Carter testified that the headaches that she suffered as a result of the accident "felt like somebody was stepping on [her] head or something." After the accident, Carter was out of school for approximately one week. She was treated for neck and lower back pain for three or four months. She stated that she has experienced sudden pain in her legs and "when it hurts, it hurts bad." She testified that she still experiences pain in her head, lower back and shoulders, and she expects the pain to continue in the future. After she received stitches in her forehead, the wound was left unbandaged. When out in public, she was teased because of the stitches. She was so ashamed of her appearance that she cried because she cared about her appearance. Carter visited a plastic surgeon because she wanted to get rid of the scars on her face and because she "[doesn't] like [her] face like this." Carter testified that the plastic surgeon told her that even if she undergoes surgery to remove the glass fragments in her forehead, she would still have facial scarring. During the period when Carter was undergoing physical therapy following the accident, she could not play basketball or attend meetings or parties. After consulting with a psychologist, Carter was diagnosed with post-traumatic-stress disorder. Carter testified that the accident has caused her "great distress" and that she has experienced nightmares, loss of sleep, anxiety, and embarrassment.

Carter lives with her grandmother, Lula Henry, Ph.D., a university professor. Henry testified that as a result of the accident, Carter sometimes cries at night, is anxious when she gets in a car, and suffers from frequent headaches. According to Henry, before the accident, Carter was an avid basketball player, but could not play basketball during the time she was receiving physical therapy treatments because she

6

was in pain. Henry stated that at the time of trial, Carter still did not play much basketball because she says it hurts her back.

Dr. Duncan's notes regarding his consultation with Carter describe her mood as "mildly depressed." The notes show that Carter has a "mild phobic response" and becomes "real nervous" when riding in a car. Carter reported that she is "more irritable," "get[s] mad easily," and does not feel like going anywhere.

Smith argues that Carter "failed to provide any evidence that rises to a compensable level as described and required by *Parkway Co. v. Woodruff.*" *See Parkway*, 901 S.W.2d at 444. In *Fifth Club*, however, the Texas Supreme Court distinguished between cases, like *Parkway*, that did not involve claims for personal injuries, from cases, like *Fifth Club*, that do involve claims for personal injuries. *See Fifth Club*, 196 S.W.3d at 798.

We conclude that the evidence shows the nature of Carter's mental anguish, its lasting duration, and the severity of her injuries, and is therefore legally sufficient to support past and future mental anguish damages. *See id.* at 797–98 (holding that assault victim's testimony that he continued to be depressed, humiliated, non-communicative, unable to sleep, and angry, continued to have headaches and nightmares, and that his daily activities with his wife and daughter continued to be detrimentally affected almost two years after incident was legally sufficient to support future mental anguish damages).

Reviewing all the evidence, we also conclude that the trial court's finding is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176. Smith argues that evidence that Carter missed a week of school and possibly some parties does not establish a substantial disruption

7

of her daily routine. Smith also points to Carter's testimony that she plays basketball "every day." Smith also argues that Carter's "yes" answers to leading and conclusory questions that she was embarrassed, ashamed, and anxious were insufficient to support a mental anguish award. *See Jackson v. Gutierrez*, 77 S.W.3d 898, 903 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding appellee's conclusory "yes" response to question of whether she had some mental anguish was insufficient to support mental anguish damages). This evidence does not negate the evidence that Carter continues to suffer from pain, depression, anxiety, and shame about her facial scars. We conclude that the evidence is legally and factually sufficient to support the trial court's damage award for past and future pain and suffering and mental anguish. We overrule Smith's first issue.

### III. EXCESSIVE DAMAGE AWARD

By his second issue, Smith contends that even if the evidence supports some award for mental anguish, the trial court's damage award of $24,500 for past and future pain and suffering and mental anguish is excessive. By a sub-issue, he also contends that because the trial court combined mental anguish damages with pain and suffering damages, this Court should reverse the entire $24,500 damage award.

### A. Standard of Review

We review a complaint that damages are excessive for factual sufficiency. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). If we find the evidence to be factually sufficient, we are not at liberty to order a remittitur. *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 528 (Tex. App.—San Antonio 1996, writ denied).

### B. Discussion

8

When the existence of some pain, mental anguish and disfigurement has been established, "there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact finder." *Pentes*, 840 S.W.2d at 80. The fact finder "is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering." *Id.*

Here, the trial court awarded $18,500 in damages for past pain, suffering and mental anguish and $6,000 for future pain, suffering and mental anguish. As noted, Carter testified that fourteen months after the accident, she continues to suffer from neck and lower back pain, sudden headaches, depression, and anxiety. She testified that she will likely undergo surgery to remove the glass fragments from her forehead but that she will still have facial scars. We cannot say that the evidence supporting the trial court's award of past and future damages for pain, suffering and mental anguish is so weak or so contrary to the overwhelming weight of all the evidence as would lead us to conclude that the damages are excessive. *See Cain*, 709 S.W.2d at 176.

By his sub-issue, Smith argues we should reverse the entire award because the trial court combined mental anguish damages with pain and suffering damages. In support, Smith cites *Jackson*, 77 S.W.3d at 903. In *Jackson*, however, the court found that there was no evidence supporting an award of mental anguish damages. *See id.* Because the record in *Jackson* did not provide a means of distinguishing the amount awarded for mental anguish from that awarded for pain and suffering, it also reversed the pain and suffering award. *Id.* at 903–04. Here, however, we have found the evidence legally and factually sufficient to support an award of mental anguish damages; therefore, *Jackson* is inapplicable. We overrule Smith's second issue.

## IV. SEAT BELT FINDING

By his third issue, Smith argues that the great weight of the evidence showed that Carter was not wearing her seat belt at the time of the accident and so the trial court erred in failing to find that Carter was contributorily negligent. Smith points to the following evidence: (1) the police report indicated that Carter was not wearing a seat belt; (2) the EMS report stated that Carter was not wearing a seat belt; and (3) the emergency room records refer to Carter as an unrestrained passenger. Smith argues that because the Texas Legislature repealed former section 545.413(g) of the Transportation Code in 2003—which, prior to 2003, prohibited evidence of non-use of a seat belt in a civil trial—such evidence is now admissible to show that a plaintiff is responsible for her own damages.[3] Carter argues that the repeal of the "statutory bar does not necessarily mean that the Legislature intends for seatbelt usage to be introduced at trial."

We need not decide the effect of the repeal of the statutory bar to such seat-belt evidence, however, because the trial court found that Smith did not meet his burden of proving that Carter was not wearing her seat belt. In its oral findings, the trial court stated,

> I'm going to find on the issue of the seat belt that the police officers really had no real recall of what was going on, and the ambulance driver was real cloudy on it. I don't think the burden was met on the issue of the seat belt. So, that will also be declined.

We agree with the trial court. Carter testified that she was wearing her seat belt. Payne testified that he and Carter were both wearing their seat belts. David Vaughn, one of the investigating police officers for the Beaumont Police Department, testified that he does not remember whether Carter was wearing her seat belt or not. Chris

---

[3] *See* Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 1, sec. 545.413(g), 1995 TEX. SESS. LAW SERV. 1025, 1644, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 8.01, 2003 TEX. SESS. LAW SERV. 847, 863.

10

Daniels, an investigating officer with the Beaumont Police Department, testified that when he arrived at the scene of the accident, Carter was already in the ambulance and he did not speak to her. Joseph Edward Stuart, a paramedic with the City of Beaumont, testified that when he arrived at the scene, Carter was walking around and therefore, his knowledge as to whether she was wearing her seat belt was based on what she said at the time. We conclude that the trial court's finding that Smith did not establish Carter's contributory negligence by proving that she was not wearing a seat belt was not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176. We overrule Smith's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.


DORI CONTRERAS GARZA
Justice

Delivered and filed the
9th day of August, 2012.

11