Terry L. BLACKSTONE, Appellant,

v.

Nancy B. THALMAN d/b/a Thalman Properties, Appellee.

No. 14–95–01153–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 10, 1997.

Ronald G. Wiesenthal, William B. Emmons, Houston, for appellant.

Mark G. Lazarz, Houston, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Justice.

Appellee, Nancy B. Thalman, a real estate broker, sued appellant, Terry Blackstone, for the commission due under a listing agreement between the parties. The cause was tried to the court which found in favor of Thalman and awarded her $45,000 in damages plus attorney's fees. Blackstone, in seven points of error, challenges the sufficiency of the evidence in support of the judgment. We reverse and render judgment for appellant.

Blackstone, who was seeking to sell his residence, executed a real estate listing agreement with Thalman on November 20, 1991. The agreement provided that Thalman would attempt to procure a buyer willing to purchase the home for $750,000. Blackstone agreed to sell the house so long as the light fixtures in the breakfast and dining rooms, as well as a Tiffany lamp in the home, were excluded from the sale. Thalman's 6% professional service fee was to be considered earned and payable when she procured a buyer "ready, willing and able" to purchase the property at the price and terms stated in the agreement or at any other price and terms acceptable to the seller. By the terms of the original listing agreement, the contract was to expire at the end of six months, but Blackstone subsequently agreed to extend the listing for an additional six months.

In the fall of 1992, Thalman found a potential buyer, Carl Lewis, who initially made an offer to purchase the home for $550,000 in cash and to take possession within 48 hours after closing. Under the terms of the proposed earnest money contract tendered by Lewis, the chandeliers in the dining room, master bedroom, and entry hall were to be excluded from the sale. Blackstone refused to accept the offer. At some point, Lewis offered to purchase the house for the $750,000 asking price, in cash, with a proposed closing date of November 12, 1992.[1] Lewis agreed to delay taking possession of the house until seven days after the closing, but required the return of a satisfactory appraisal of the property for at least the $750,000 purchase price. Blackstone agreed to the price and did not object to the closing date, but wanted to remain in the house through the holidays while he looked for a new residence. He insisted, therefore, on retaining possession of the home for 90 days. The negotiations stalled, no earnest money contract was executed, and the listing agreement expired on November 30, 1992. More than two years later, Thalman sent a demand letter to Blackstone requesting payment of her professional service fee. When Blackstone refused to pay the commission, Thalman filed suit. The trial court found that Thalman satisfied her responsibilities under the listing agreement because she had produced a buyer ready, willing and able to purchase the property.

 In his first point of error, Blackstone contends the evidence is legally insufficient, or in the alternative, factually insufficient to support the finding that appellee procured a

---

1. Appellee's Exhibit No. 4, a demand letter for the commission due under the listing agreement, indicates that this final version of the earnest money contract was delivered to appellant on October 5, 1992.

buyer who was ready, willing and able to purchase the appellant's property. When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). On review, this Court will consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). When reviewing a complaint that the evidence is factually insufficient to support a finding, this Court will consider all of the evidence which supports the finding as well as that which is contrary to it. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). This court will set aside the finding only if the evidence is so weak as to be clearly wrong or manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■■■ A licensed real estate broker, who is authorized to sell real property under a valid listing agreement, is entitled to the commission specified in the agreement when he or she produces a purchaser who is ready, willing and financially able to purchase the property under the terms of the listing agreement. *Cooper v. Wildman*, 528 S.W.2d 80, 84 (Tex.Civ.App.—Corpus Christi 1975, no writ). It is well established that a realtor who produces a purchaser who is able and willing to buy on the seller's terms is entitled to his commission if completion of the sale is prevented by the seller. *Stiles v. DeAngelo*, 706 S.W.2d 175, 177 (Tex.App.—Fort Worth 1986, no writ). The right to a commission is earned when the broker procures, within the specified time period of the listing agreement, a purchaser who is ready, willing, and able to purchase the property upon the terms

contained in the listing agreement or upon terms and price agreeable to the owner.[2] *Star Supply Co. v. Jones*, 665 S.W.2d 194, 197 (Tex.App.—San Antonio 1984, no writ). Here, it is undisputed that the buyer did not offer to purchase the seller's home upon the same terms as those contained in the listing agreement. The issue presented then is whether the buyer was ready, willing and able to purchase the property on any *other* terms "agreeable" to the owner.

■ As between Blackstone and Thalman, the listing agreement was a conditional contract.[3] The agreement states, in pertinent part:

> [The] Brokers right to the professional service fee shall be earned and payable ... *if* Broker ... procures a Buyer ready, willing and able to buy said Property [1] at the price and terms stated herein, or [2] at any other price and terms acceptable to Owner....

(emphasis added). This provision of the agreement contains two conditions precedent. By the terms of the contract, Thalman was entitled to her commission if either condition was satisfied.

If Lewis had offered to purchase the house under the same terms as those contained in the listing agreement, the first condition precedent would have been satisfied, and Thalman would have been entitled to her commission. The first condition precedent was not met, however, because Lewis added several terms to his offer that do not appear in the listing agreement. Perhaps the most significant demand made by Lewis was for the return of an appraisal showing the value of the property as being equal to, or in excess of, $750,000. Blackstone, the seller, insisted on retaining possession of the property for 90 days to allow him to remain in the house through the holidays. Neither of these conditions are contained in the listing agreement. As such, the parties were attempting to negotiate a contract distinctly different

---

2. The contract before us defines a ready, willing, and able buyer as "a Buyer ready, willing and able to buy said Property at the price and terms stated herein, or at any other price and terms acceptable to Owner."

3. A conditional contract is an executory contract, the performance of which depends on a condition. *George v. Houston Boxing Club, Inc.*, 423 S.W.2d 128, 132 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.).

from the one envisioned in the listing agreement.

Blackstone agreed to Lewis' demand for an appraisal. Lewis, however, did not agree to Blackstone's request to retain possession, and the parties were unable to reach an agreement. Appellee argues that by agreeing to Lewis's additional terms in an effort to obtain a contract, Blackstone necessarily found them "acceptable," thereby satisfying the second condition precedent and obliging him to pay Thalman's commission. This interpretation violates basic principles of contract law.

Lewis's conditional offer to purchase the property was, in effect, a counterproposal. Blackstone, in turn, responded with his own counteroffer, *i.e.*, he would accept Lewis's additional terms if he could retain possession of the home for an additional 90 days. A counteroffer constitutes a rejection, not an acceptance, of the original offer.[4] A compromise offered during negotiations on a putative contract is simply not an agreement, and we cannot attribute to Blackstone an agreement which he considered, but never made.

Moreover, public policy favors commercial transactions. Once a prospective buyer has rejected an offer of sale under the terms of the listing agreement, the parties should be encouraged to negotiate a contract, if possible, under any alternative terms agreeable to both the buyer and seller. While the seller continues to be bound by the terms of his continuing offer under the listing agreement and must honor its terms if the buyer should subsequently accept them,[5] *both* parties may add, delete, or modify terms of the original proposal during their attempts to negotiate an *alternative* agreement. Without this freedom to negotiate, sellers will be reluctant to make counteroffers, sales will diminish, commerce will suffer, and real estate agents will earn fewer commissions.

■ We find that, as a matter of law, the phrase "at any other price and terms acceptable to Owner," does not include proposed terms conditionally "agreed" to by the owner during negotiations, but never "accepted" by the successful conclusion of an agreement between the parties, *i.e.*, an earnest money contract. Rather, we believe the only reasonable interpretation of this phrase, consistent with the law of contracts, is that it refers to modifications of the listing agreement that may occur with the consent of the seller and his real estate agent. For example, *before* a potential buyer has been located, a seller may decide to authorize his agent to offer the property at a reduced price or under less rigorous terms than those contained in the listing agreement in the hope of stimulating interest in the property. Inclusion of the phrase "or at any other price and terms acceptable to Owner" permits such a modification of terms while protecting the agent's right to receive a commission if he should find a buyer who is ready, willing and able to purchase the property at the reduced price and/or modified terms.

The parties did not execute an earnest money contract, there was no meeting of the minds, and at no time did the buyer offer to purchase the property under the terms and conditions of the listing agreement. The judgment of the trial court attempts to enforce the terms of an agreement that might have been, but never was. Because Thalman failed, as a matter of law, to locate a ready, willing and able buyer, Blackstone's first point of error is sustained. Finding reversible error in appellant's first point of error, we do not reach his remaining points. The

---

4. It is well established that an acceptance, to be effective, must be positive and unambiguous. SAMUEL WILLISTON ET AL, A TREATISE ON THE LAW OF CONTRACTS § 6:10, at 68 (4 th Ed.1991). Further, it must not introduce additional terms and conditions not found in the offer. 17A AM.JUR.2D *Contract* s § 86 (1991). Therefore, a counteroffer is not an acceptance, but a rejection of the original offer. *See* ARTHUR L. CORBIN ET AL., CORBIN ON CONTRACTS § 3.35, at 490 (rev. ed.1993); 17A Am. Jur 2d Contracts § 65 (1991); 17 C.J.S. *Contracts* § 43 (1963).

5. As between Blackstone and Lewis, the listing agreement had the practical effect of enforcing a continuing offer of sale. Because the agreement authorized Thalman, as Blackstone's agent, to offer the property for a specified period of time under the price and terms set forth in the agreement, Blackstone was obliged to sell the property to any ready, able and willing buyer who accepted his offer or bear the burden of paying Thalman's commission without the benefits of a sale.

judgment of the trial court is reversed and judgment is rendered for Blackstone.