Opinion issued April
8, 2010.

 

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-07-01109-CV

———————————

Maria C. Figueroa, Appellant

V.

Edgar Davis
JR., Appellee



 



 

On Appeal from the County Civil Court at Law No. 2

Harris County, Texas



Trial Court Case No. 783,981

 



 

O P I N I O N

          Appellant,
Maria C. Figueroa, appeals from a judgment rendered upon a jury verdict in
favor of appellee, Edgar Davis Jr.  We
determine whether (1) the evidence is legally and factually sufficient to
support damages and (2) the trial court abused its discretion in its award of
prejudgment interest.  We affirm.

BACKGROUND

          On
July 27, 2002, Figueroa ran a stop sign and hit the car that Davis was driving
and in which Diane Gill was his passenger. 
In December of that year, Davis and Gill sued Figueroa for personal
injury and property damage.  In September
2006, a jury found Figueroa negligent. 
The jury awarded (1) zero dollars to Davis and Gill for all past or
future damages on which it was charged (past or future medical care, physical
pain and mental anguish, disfigurement, or physical impairment); (2) $500 in
property damage to Davis for diminution in value of his car; (3) $75 in lost
wages to Gill.  The trial court rendered
judgment on the verdict.  Davis and Gill
moved for new trial.  The trial court
granted a new trial to Davis, but not to Gill, and rendered an amended
judgment, styled “partial final judgment,” as to Gill.  Gill is not a party to this appeal.

          In
September 2007, Davis’s negligence claim against Figueroa went to trial.  Figueroa was again found negligent.  Figueroa does not contest this liability
finding on appeal.  The trial court
submitted damages by element, both by type of injury and by whether the injury
occurred in past or in future.  The jury
was instructed:

Consider the elements of
damages listed below and none other. 
Consider each element separately. 
Do not include damages for one element in any other element.  . . .

 

Do not include any amount
for any condition not resulting from the occurrence in question.  Do not include any amount for any condition
existing before the occurrence in question, except to the extent, if any, that
such other condition was aggravated by any injuries that resulted from the
occurrence in question.  

 

The jury awarded Davis the following damages:

·       
$10,000 for past physical pain and mental anguish,

·       
$450 for future physical pain and mental anguish,

·       
$10,000 for past disfigurement,

·       
$450 for future disfigurement,

·       
$10,000 for past physical impairment,

·       
$450 for future physical impairment,

·       
$5,267.78 for past medical care, and

·       
$5,865 for future medical care.

“Physical pain,” “mental anguish,” “disfigurement,”
and “physical impairment” were not defined in the charge, and no party objected
to the lack of such definitions.  

          On
September 25, 2007, the trial court signed a judgment on the verdict, awarding,
among other things, $42,482.78 in total damages and $14,091.30 in prejudgment
interest.

          Figueroa
timely moved to modify the judgment, with alternative requests for new trial or
for remittitur.  On December 6, 2007, the
trial court signed an order denying Figueroa’s motion, but nonetheless signed
an amended judgment.  The amended judgment
retained the previous damage award, but reduced prejudgment interest to
$14,005.83.  Figueroa appeals.

SUFFICIENCY OF THE EVIDENCE

          Under
issue two, Figueroa raises two complaints. 
First, she argues that there is legally and factually insufficient
evidence to show past or future physical pain or mental anguish or future disfigurement.  Second, Figueroa contends that there is
legally and factually insufficient evidence to support the award of damages for
future medical care.  In partial support
of both of these arguments, Figueroa also contends that the lack of expert
medical testimony connecting Davis’s dental injuries with the accident
precludes any damages (including past and future medical expenses) based on
that injury.  

A.
     Standards of Review

          When,
as here, an appellant attacks the legal sufficiency of an adverse finding on an
issue for which it did not have the burden of proof, it must demonstrate that
there is no evidence to support the adverse finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
Such a no-evidence challenge will be sustained when “‘(a) there is a
complete absence of evidence of a vital fact, (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (c) the evidence offered to prove a vital fact is no more than a
mere scintilla, or (d) the evidence conclusively establishes the opposite of
the vital fact.’”  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)
(quoting Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997)).

          In
our legal-sufficiency review, “we must view the evidence in a light that tends
to support the finding of disputed fact and disregard all evidence and
inferences to the contrary.”  Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003). Nonetheless, “[t]he final test for legal
sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review. . . .  [L]egal-sufficiency review in the proper
light must credit favorable evidence if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not.”  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

          If
more than a scintilla of evidence supports the jury’s finding, “the jury’s
verdict . . . must be upheld.”  Miller, 102 S.W.3d at 709.  “[M]ore than a scintilla of evidence exists
if the evidence ‘rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.’” 
Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004) (quoting Havner,
953 S.W.2d at 711).  Conversely, evidence
that is “‘so weak as to do no more than create a mere surmise’” is no more than
a scintilla and, thus, no evidence.  Id. (quoting Kindred v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 

          To
the extent that Figueroa preserved certain legal-sufficiency challenges only by
motion for new trial, her relief on them is limited to remand, not rendition.[1]  See Brown
v. Traylor, 210 S.W.3d 648, 659 (Tex. App.—Houston [1 Dist.] 2006, no pet.) (holding
that legal-sufficiency challenge raised in motion for new trial allowed only
for remand). 

          In reviewing a factual-sufficiency
challenge to a finding on an issue on which the appellant did not have the
burden of proof, we consider and weigh all of the evidence and set aside the
judgment only if the evidence that supports the challenged finding is so weak
as to make the judgment clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986).
We must examine both the evidence supporting and that contrary to the judgment.[2] See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  

          Under
either type of sufficiency challenge, the jury is the sole judge of witnesses’
credibility, and it may choose to believe one witness over another; a reviewing
court may not impose its own opinion to the contrary.  City of
Keller, 168 S.W.3d at 819. Because it is the jury’s province to resolve
conflicting evidence, we must assume that jurors resolved all conflicts in
accordance with their verdict.  Id. at 819–20.

B.      Expert Testimony on Causation

          Under
part of her first issue, Figueroa contends that the evidence is legally or
factually insufficient to prove any damages related to Davis’s dental injury
because Davis failed to present any expert testimony of causation.  Specifically, Figueroa contends that (1) the
only testimony of causation came from Davis, who was not an expert; (2) lay
testimony did not suffice to prove causation in this case; and, in any event,
(3) Davis’s testimony on causation was “entirely subjective,” and his initial
medical records “omit entirely any mention of” this injury.[3]  Because this third argument does not concern
the necessity for expert causation testimony, we construe it as an alternative
sufficiency challenge: that if no expert testimony was required, then Davis’s
lay testimony that was offered to show causation was legally or factually
insufficient for the stated reasons.  Figueroa
raised these sufficiency challenges for the first time in her motion for new
trial.

          1.       The
Law

          “The
general rule has long been that expert testimony is necessary to establish
causation as to medical conditions outside the common knowledge and experience
of jurors.”  Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex. 2007).  However, “in limited circumstances, the
existence and nature of certain basic conditions, proof of a logical sequence
of events, and temporal proximity between an occurrence and the conditions can
be sufficient to support a jury finding of causation without expert evidence.”  Id.
at 667.  That is, “the causal connection
between some events and conditions of a basic nature (and treatment for such
conditions) are within a layperson’s general experience and common sense.”  Id.
at 668.  “This conclusion accords with
human experience, [the Texas Supreme Court’s] prior cases, and the law in other
states where courts have held that causation as to certain types of pain, bone
fractures, and similar basic conditions following an automobile collision can
be within the common experience of lay jurors.” 
Id.  “Thus, non-expert evidence alone is
sufficient to support a finding of causation in limited circumstances where
both the occurrence and conditions complained of are such that the general
experience and common sense of laypersons are sufficient to evaluate the
conditions and whether they were probably caused by the occurrence.”  Id.  When the exception applies, then “[g]enerally,
lay testimony establishing a sequence of events which provides a strong,
logically traceable connection between the event and the condition is sufficient
proof of causation.”  Morgan v. Compugraphic Corp., 675 S.W.2d
729, 733 (Tex. 1984).

          2.       Discussion

          The
trial court admitted Davis’s medical records accompanied by a Texas Civil
Practice and Remedies Code section 18.001 affidavit, which was not
controverted.  See Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (Vernon 2008).  This
proved only the expenses’ reasonableness and necessity, not causation.  See id.
(“Unless a controverting affidavit is filed as provided by this section, an
affidavit that the amount a person charged for a service was reasonable at the
time and place that the service was provided and that the service was necessary
is sufficient evidence to support a finding of fact by judge or jury that the
amount charged was reasonable or that the service was necessary.”); S.W. Bell Tel., L.P. v. Valadez, No.
2-07-129-CV, 2008 WL 425746, at *3 (Tex. App.—Fort Worth Feb. 14, 2008, no
pet.) (memo. op.) (providing that compliance with section 18.001 does not
establish causation).  The sole evidence
of causation came from Davis.

          The accident occurred on July 27,
2002, a Saturday.  Davis testified that
when the vehicles impacted, his “body went forward” and his “teeth and neck hit
the steering wheel.”  His mouth was not
then bleeding, and his teeth were not knocked out right then from the impact,
but they were “cracked.”  Davis testified
that the officer who came to the scene “asked [him] about—what was wrong with
[his] mouth.”  Davis explained that the
officer’s question was the result of his having told her that he “couldn’t
talk, because it was hurting.”

          Over the next few days after the
wreck, Davis’s teeth “would be in pieces in [his] mouth” when he woke up in the
morning, and when he tried brushing his teeth, they “would just fall out” and
would “break off.”  Eventually, his front
teeth fell out entirely, leaving only “pieces up in the roof of [his] mouth.”  Davis answered “No, sir” to the question: “Are
you aware of any prior record in this case that says that you hit your mouth on
anything other than a steering wheel?”  A
dental patient information form from one of Davis’s treating clinics indicated
that Davis had not before been told that he had gum or periodontal disease,
although the same form indicated that Davis had not had a dental examination,
x-rays, or cleaning in the past six months.

          This testimony establishes “a sequence
of events which provides a strong, logically traceable connection between the
event and the condition is sufficient proof of causation.”  Morgan,
675 S.W.2d at 733.  It is more than mere
temporal proximity: Davis’s teeth hit a hard object during the impact, they
were immediately cracked, and within days, they were crumbling and falling out
of his mouth.  This evidence is akin to
the “pain, bone fractures, and similar basic conditions following an automobile
collision” that the Guevara court
indicated would fall within the common experience of lay persons so that
causation could stand on lay testimony.  See Guevara, 247 S.W.3d at 665; see also Valadez, No. 2-07-129-CV, 2008 WL 425746, at *3 (holding
that plaintiff’s lay testimony—that he experienced severe pain to shoulder
immediately upon falling into hole, combined with evidence that plaintiff had
not had this pain before accident—sufficed to show causation).  The trial court did not err in so
determining.

          Figueroa alternatively argues that, if
lay testimony could prove causation, Davis’s testimony fell short because it
was “entirely subjective” and was not reflected in the medical records of the
initial clinic that Davis visited.  Davis
first sought medical attention at Accident and Injury (“A&I”) within less
than a week after the accident.  No one
at A&I checked his teeth.  What
appears to be initial questionnaires and personal histories completed at
A&I indicated “none” for “dental problems” and impact to head or face, and
Davis testified at trial that he did not remember telling his care providers at
A&I about his dental injury. 
However, Davis also testified that he must have told the A&I staff
about his dental problems, since he was sent to his second treating clinic,
Americare, for the very reason that Americare “had a dental facility” and
A&I did not.  Supporting Davis’s
testimony was a “treatment plan” form from A&I, dated August 1, 2002,
indicating, “Refer for dental consult.” 
Additionally, the records at Americare—the earliest of which was dated
August 8, 2002—showed that Davis had injured his teeth.  Davis received dental care at Americare,
which in July 2003 drew up an estimate for permanent teeth to replace Davis’s
lost ones.  

          The fact that Davis’s dental injury
was not recorded until his second set of medical records, in contrast to his
testimony that his injury was immediate upon impact, went to the weight of his
testimony—a matter for the jury to resolve. 
See City of Dallas v. Allen,
No. 05-01-00158-CV, 2002 WL 357165, at *2 (Tex. App.—Dallas Mar. 7, 2002, no
pet.) (not designated for publication) (holding that evidence of causation was
legally sufficient when car-accident plaintiff testified that he reported elbow
injury at time of medical treatment, even though initial medical records did
not reveal that he did so).  The evidence
is not legally or factually insufficient because of it. 

 

 

C.      Non-Economic Damages

          Figueroa
next challenges the legal and factual sufficiency of the jury’s award of all
non-economic damages, past and future.

          “Non-economic
damages include compensation for pain, suffering, mental anguish, and
disfigurement.”  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 763 (Tex.
2003).  “The process of awarding damages
for amorphous, discretionary injuries such as mental anguish or pain and
suffering is inherently difficult because the alleged injury is a subjective,
unliquidated, nonpecuniary loss.”  HCRA of Tex., Inc. v. Johnston, 178
S.W.3d 861, 871 (Tex. App.—Fort Worth
2005, no pet.).  “Once the existence of
some pain, mental anguish and disfigurement has been established, there is no
objective way to measure the adequacy of the amount awarded as compensation,
which is generally left to the discretion of the fact finder.”  Pentes
Design, Inc. v. Perez, 840 S.W.2d 75, 80, (Tex. App.—Corpus Christi 1992, writ denied).  “The amounts of damages awarded for pain and
suffering and disfigurement are necessarily speculative and each case must be
judged on its own facts.”  Id. at 80-81.

          1.       Past and Future Physical Pain and Mental Anguish

          The
jury awarded $10,000 and $450, respectively, for physical pain and mental
anguish sustained in the past and future. 


          Physical
pain and suffering may be established by circumstantial evidence. Johnston, 178 S.W.3d at 871.  “The duration of the pain . . . is an
important consideration.” Id. The
fact finder “is given a great deal of discretion in awarding an amount of
damages it deems appropriate for pain and suffering.”  Id. 

          Davis
testified that upon impact, he was thrown forward, and his neck and teeth hit
the steering wheel.  Within a few days,
his attorney sent him to A&I for treatment. 
Davis claimed that his neck, lower back, and teeth were hurt in the
accident.  His medical records from both
A&I and Americare indicated that within a few days of the accident, he was
having headaches and radiating neck and back pain (which Americare’s records
indicated was “severe”) and that he was being treated for these things multiple
times from August through October 2002 at Americare.  Although he had injured his neck and back in
an on-the-job accident about five years before trial, Davis was no longer
receiving “any kind of treatment” for his neck and back when the instant
accident occurred, any residual pain that he had from that prior had resolved
after a few months, and he reported to his Americare doctor that “he was in a
good state of health and did not suffer from” his symptoms prior to the instant
car accident.  Although Davis’s back at
the time of the second trial was “better,” he believed that “it’s not going to
ever be right.”  

In contrast, Davis admitted that he
was not blaming all of his current back problems on the accident with
Figueroa.  He also admitted that his
prior back injury had not been fully resolved before the instant accident,
although it had gotten “better.”  Davis
voluntarily ceased physical therapy at Americare in October 2002 because he
“felt that [he] didn’t need [any] more therapy.”  Finally, he testified that he did not plan to
return for physical therapy in the future unless he had to do so.

          Davis
smashed his teeth into the steering wheel with such force that they cracked
immediately and crumbled shortly thereafter. 
For just under five years, Davis had small fragments of his front teeth
protruding from his gum line.  Davis
tried to eat every day, but could not always do so.  He could not drink anything cold, describing
the pain that he felt when he did so as a “chill.”  Neither could Davis eat anything hard, such
as apples.  He had to eat certain foods
from the side of his mouth.  Anbesol had not
helped alleviate his tooth pain, although aspirin did. 

          Americare’s
2003 estimate for replacing
Davis’s teeth with permanent fixtures was $5,865, which Davis could not
afford.  Davis testified that “because
[he] waited so long to hear from these people [sic] about my teeth,” and
because he “was about to starve to death,” he decided to obtain a “gold card,”
which would allow him to be treated in the Harris County Hospital District
(“HCHD”).  It took two applications, but
Davis finally obtained a gold card shortly before trial.  The HCHD’s treatment plan involved pulling
Davis’s teeth and replacing them with a removable bridge.  About two weeks before the second trial,
Davis had HCHD pull four of his teeth, after which he felt “much better.”  

          Sufficient
evidence of either past physical pain or past mental anguish could support the
award because the charge did not ask for separate damages figures for each type
of injury.  The above evidence is some
evidence of past physical pain arising from Davis’s teeth, back, and neck
injuries; it is also not such weak evidence of past physical pain as to render
the $10,000 award manifestly unjust.  See Perez, 840 S.W.2d at 80-81 (holding that evidence was
legally and factually sufficient to support $500,000 award for mental anguish,
physical pain, and disfigurement for child whose two permanent front teeth were
lost while playing in area designed by defendant).  Moreover, the jury could rationally have
determined that undergoing a procedure to install permanent teeth—which would
entail bone replacement grafts, removal of exposed roots, scaling and root
planing, and fusion of porcelain teeth—would result in some physical pain in
the future.  Such an inference would
support the very modest sum that the jury awarded as damages for future pain
and mental anguish.  That same inference
is also not so weak as to render the future-damages award manifestly unjust.

 

 

          2.       Past
and Future Disfigurement

          The
jury awarded $10,000 and $450, respectively, for disfigurement in the past and
future.  

          “Disfigurement
has been defined as that which impairs the appearance of a person, or that
which renders unsightly, misshapen or imperfect, or deforms in some manner.”  Doctor
v. Pardue, 186 S.W.3d 4, 18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). 
“The matter of future disfigurement is necessarily speculative and there
is no mathematical yard stick by which one can measure damages for it.”  Tri-State
Motor Transit Co. v. Nicar, 765 S.W.2d 486, 494 (Tex. App.—Houston [14th
Dist.] 1989, no writ).  “Each case must
be judged on its own facts and considerable discretion must be vested in the
jury.”  Id.

          The above evidence showing that
Davis’s front teeth crumbled out of his mouth, leaving only small pieces at his
gumline, that they were not pulled until almost five years later, and that they
were still missing at trial is some evidence that supports the jury’s finding
of past-disfigurement damages.  See Perez, 840 S.W.2d at 80-81 (holding
that evidence was legally and factually sufficient to support $500,000 award
for mental anguish, physical pain, and disfigurement for child whose two
permanent front teeth were lost in injury occurring in play area designed by
defendant).  Moreover, the jury could
rationally have inferred that at least some time would pass before Davis could
undergo the procedure to install permanent teeth, which inference would support
the small sum that it awarded as damages for future disfigurement.  That rational inference is not so weak as to
render the future-damages award manifestly unjust, either.

3.       Past and Future Physical Impairment

          The
jury awarded $10,000 and $450, respectively, for physical impairment sustained
in the past and future.  

          “Physical
impairment, sometimes called loss of enjoyment of life, encompasses the loss of
the injured party's former lifestyle.”  Gen. Motors Corp. v. Burry, 203 S.W.3d
514, 554 (Tex. App.—Fort Worth
2006, pet. denied); see Doctor,
186 S.W.3d at 18 (quoting Golden Eagle
Archery, Inc., 116 S.W.3d at 772).  “[L]oss
of enjoyment of life fits best among the factors a factfinder may consider in
assessing damages for physical impairment. 
Indeed, if other elements such as pain, suffering, mental anguish, and
disfigurement are submitted, there is little left for which to compensate under
the category of physical impairment other than loss of enjoyment of life.”  Golden
Eagle Archery, Inc., 116 S.W.3d at 772. 
A plaintiff generally must show that his physical-impairment damages are
substantial and extend beyond any pain, suffering, mental anguish, lost wages
or diminished earning capacity.  Burry, 203 S.W.3d at 555; see Golden Eagle Archery, Inc., 116
S.W.3d at 772 (indicating that it would be “appropriate to advise the jury [by
instruction] that it may consider as a factor loss of enjoyment of life.  But the jury should be instructed that the
effect of any physical impairment must be substantial and extend beyond any
pain, suffering, mental anguish, lost wages or diminished earning capacity and
that a claimant should not be compensated more than once for the same elements
of loss or injury.”).  In this case,
physical impairment was undefined, and the relevant instruction was that the
jury “[c]onsider the elements of damages listed below and none other.  Consider each element separately.  Do not include damages for one element in any
other element.”

           Figueroa contends on appeal that Davis did not
complain of any sport, hobby, or other recreational activity that he could not
do as a result of his injuries.  She also
argues that the evidence does not rise to the level of impairment because Davis
“could eat some food, he just had to chew on the side of his mouth or cut
things in half” and “could drink normal liquids, he just had a ‘chill’ when he
drank cold water.”  This challenge was
preserved with respect to Figueroa’s complaints concerning future physical
impairment, which she raised by motions for directed verdict and new trial and
objections to the charge elements on future damages.  However, this appellate challenge does not
comport with her sufficiency challenge made below to the past physical
impairment award, which was preserved in her motion for new trial: “[T]he only
evidence concerning past physical ‘impairment’ was that [Davis] had difficulty
eating his favorite foods due to his dental problems.  Yet again, because there was no [expert]
evidence linking such problems to the motor vehicle collision, the jury’s award
of impairment damages was improper.”

          In
any event, we hold that there was legally sufficient evidence to support the
award of past physical-impairment damages. 
Davis testified that he tried to eat every day, but could not always do
so.  Neither could Davis eat anything
hard, such as apples, or anything cold. 
He could not eat some of the foods that he loved, such as hot dogs and
hamburgers.  He had to eat certain foods
from the side of his mouth or had to eat soft foods.  This condition lasted for years before
trial.  

          The
jury was instructed to award damages separately for each injury, without
awarding damages attributable to one injury for another injury; we presume that
the jury followed this instruction because nothing in the record indicates that
it did not.  See Golden Eagle Archery, Inc., 116 S.W.3d at 771.  A jury rationally could have concluded that
an inability to eat whole categories of foods, or to eat any food at all some
days, over a period of several years was a loss of enjoyment of life (and thus
a past physical impairment) separate and apart from the physical pain or
disfigurement arising from the same injury. 
Additionally, the jury could
rationally have inferred that at least some time would pass before Davis could
undergo the procedure to install permanent teeth, which inference would support
the small sum that it awarded as damages for future physical impairment.  That rational inference is not so weak as to
render the future-damages award manifestly unjust.

 D.     Future Medical Care

          Figueroa
further contends that the evidence is legally or factually insufficient to
support the award for future medical care because Davis allegedly testified
that he was not having his dental work done at the only facility for which a treatment
estimate was proved.

          Americare’s
estimated cost for replacing
Davis’s teeth with permanent fixtures was $5,865.  This is the exact amount that the jury
awarded for future medical care.  Davis
could not afford the cost of replacing his teeth under Americare’s plan,
however.  The HCHD’s treatment plan, in
contrast, involved pulling the teeth and replacing them with a removable
bridge.  About two weeks before the
second trial, Davis had HCHD pull four of his teeth.  When he was asked if he would be having the
remainder of his dental treatment at HCHD, Davis responded, “Yes, sir.  I was.  I would
prefer to have my permanent teeth.” 
(Emphasis added.)

          Davis’s
testimony was not that he would absolutely
receive dental treatment at HCHD. 
Rather, he testified that he would instead prefer to have permanent
teeth installed.  HCHD would not install
permanent teeth; only Americare would. 
The jury awarded Davis the amount of Americare’s estimate for permanent
teeth.  Accordingly, there was legally
and factually sufficient evidence to support the finding of future medical
care.

E.      Conclusion

          We
hold that there is legally and factually sufficient evidence to support all
damages awarded.  We thus overrule issue
two in its entirety.

PREJUDGMENT INTEREST[4]

          In issue one, Figueroa contends that
the trial court erred in calculating prejudgment interest.  Primarily, she contends that the trial court
should have tolled the accrual of prejudgment interest for the entire period
between her presuit settlement offers (the earlier of which was on September 3,
2004) and the vacating of the first judgment (January 12, 2007) because the
amount of the first judgment was less than her settlement offer. Alternatively,
if the first judgment cannot be considered, she contends that the trial court
erred in tolling prejudgment interest on the amount of her settlement offer
based on only the 20 days before her earlier settlement offer was rejected by
Davis.

          1.       The
Law

          In a
personal-injury case, “[e]xcept as provided by Section 304.105 . . . ,
prejudgment interest accrues on the amount of a judgment during the period
beginning on the earlier of the 180th day after the date the defendant receives
written notice of a claim or the date the suit is filed and ending on the day
preceding the date judgment is rendered.” 
Tex. Fin. Code Ann. § 304.104 (Vernon 2006).  Section 304.105 then provides:

(a)     If judgment for a claimant is equal to or less than the amount
of a settlement offer of the defendant, prejudgment interest does not accrue on
the amount of the judgment during the period that the offer may be accepted.

 

(b)     If judgment for a claimant is more than the amount of a
settlement offer of the defendant, prejudgment interest does not accrue on the
amount of the settlement offer during the period that the offer may be
accepted.

 

Id. § 304.105 (Vernon 2006).    

“[B]oth the party seeking prejudgment interest and the party seeking to
toll it must provide the court with evidence competent . . . to establish the
proper amount of the award.”  Quality Beverage, Inc. v. Medina, 858
S.W.2d 8, 11 (Tex. App.—Houston [1st Dist.] 1993, no writ).  “This evidence may be presented at any time
during the court’s plenary power.”  Id.

          “The
abuse of discretion standard applies to the trial court’s factual findings as
they relate to prejudgment interest; but the de novo standard applies to the
trial court’s application of the law to the facts.”  Toshiba
Mach. Co., Am. v. SPM Flow Control, Inc., 180 S.W.3d 761, 785 (Tex. App.—Fort Worth 2005, pet. granted, judg. vacated
w.r.m.).  

          2.       Procedural
History

          Davis
filed suit on December 2, 2002.  The
first trial resulted in a verdict for Davis of $500, which was memorialized in
a final judgment dated November 10, 2006. 
The court granted a new trial on January 12, 2007.  Upon a second trial, the jury awarded Davis
$42,482.78.  The trial court rendered
judgment accordingly, also awarding $14,091.30 in prejudgment interest.  

          By
motion to modify the judgment, Figueroa contended that the trial court had
erred in calculating prejudgment interest. 
She alleged that she had made a written settlement offer for $3,000 on
September 3, 2004.  Necessarily invoking
section 304.105(a), Figueroa contended that prejudgment interest should not
have accrued on the amount of the final judgment ($42,482.78) from September 3,
2004 (the date of her $3,000 settlement offer) until January 12, 2007 (the date
that new trial was granted) because the first judgment had been less than the
$3,000 offer.  Her motion to modify did
not mention whether that offer had been rejected.  Portions of the record indicate that Figueroa
filed a supplement to the motion to modify, but the appellate record does not
contain that supplement. 

          At
the hearing on Figueroa’s motion to modify, Davis’s counsel admitted that
Figueroa had made a $3,000 settlement offer on September 3, 2004,[5] but contended that that
offer had been rejected on September 23, 2004 by counteroffer.  In support, Davis attached to his verified
response to the motion to modify a copy of his September 23, 2004 letter making
a “formal settlement demand” upon Figueroa for her policy limits.  Figueroa acknowledged the rejection, but
responded that she had extended a $3,500 settlement offer after that September
23 rejection; however, she produced no evidence of the $3,500 offer, and Davis
did not judicially admit that the $3,500 settlement offer had been made.   The parties disputed whether the award
amount of first judgment, which had been vacated, could be considered for
purposes of calculating prejudgment interest, i.e., they disputed whether section 304.105(a) applied.  

          The
trial court’s subsequent written order denied the motion to modify, but issued
an amended judgment on December 6, 2007, which reduced prejudgment interest to
$14,005.83, apparently attempting to take into account the 20-day period before
the $3,000 offer was rejected in the calculation of prejudgment interest.

3.       Discussion

          We
reject Figueroa’s primary argument that section 304.105(a) applies because the
first judgment was less than her settlement offer.  Section 304.105(a) applies when “judgment for a claimant is equal to
or less than” the settlement offer.  Tex. Fin. Code Ann.  § 304.104(a).  The only settlement
offer that was proved was $3,000.  The
final judgment rendered in December 2007 was not equal to or less than
$3,000.  Figueroa’s reliance on the
lesser amount awarded in the November 10, 2006 judgment is misplaced because
that judgment was vacated when a new trial was granted.  “When a motion for new trial is granted, ‘the
case shall be reinstated upon the docket of the trial court and stand for trial
the same as though no trial had been had.’” 
Wilkins v. Methodist Health Care
Sys., 160 S.W.3d 559, 563 (Tex. 2005) (quoting Wichita Falls Traction Co. v. Cook, 122 Tex. 446, 60 S.W.2d 764,
768 (1933)).  “Thus, when the trial court
grants a motion for new trial, the court essentially wipes the slate clean and
starts over.”  Id.  The November 10, 2006
judgment became a nullity the moment that the trial court granted a new trial,
and it thus cannot function to toll the accrual of prejudgment interest under
section 304.105(a).  

          Figueroa
alternatively argues:

Appellant should get a
prejudgment interest credit of $3,000 off the total judgment from the time when
the written offer was tendered until the date the 2007 judgment was
signed.  Appellant does not agree that
she should only get credit for twenty days because Appellant never withdrew the
$3,000 offer and, in fact, tendered a $3,500 offer AFTER Appellee rejected the
first offer, indicating to Appellee that the offer could still be accepted.

 

. . .

 

Furthermore, the trial
court’s interpretation of the statutes in regard to the twenty days Appellee
took to reject the offer flies in the face of section 304.105's plain language,
which provides that prejudgment interest does not accrue on the amount of the
judgment “during the period that the offer may be accepted.”  . . . 
According to the face of the statute, a claimant’s rejection of an offer
is not necessarily dispositive of whether the offer “may be accepted”—the
question is whether the offer could have been accepted.  Appellant never withdrew the offer to settle
the case and, in fact, extended a second offer of $3,500 after Appellee
rejected the first offer.  . . .  

 

(Emphasis added.) 
This argument necessarily invokes section 304.105(b), which applies when
the judgment exceeds the settlement offer and provides that “prejudgment
interest does not accrue on the amount of
the settlement offer during the period that the offer may be accepted.”  Tex.
Fin. Code Ann. § 304.105(b) (emphasis added).  

          Figueroa produced no evidence of the
$3,500 offer, and it cannot be considered for any purpose relating to
prejudgment interest.  See Medina,
858 S.W.2d at 11 (“[B]oth the party seeking prejudgment interest and the party
seeking to toll it must provide the court with evidence competent . . . to
establish the proper amount of the award.”). 
That leaves only the $3,000 offer, which was rejected 20 days after it
was made.[6]  Figueroa’s
specific issue is thus whether, as a matter of law under section 304.105(b),
the rejection of the $3,000 settlement offer caused the “period that the offer
may be accepted” to expire.  That
question has already been answered in the affirmative.  See
Qwest Communications Int’l, Inc. v. AT&T Corp., 114 S.W.3d 15, 41 (Tex.
App.—Austin 2003) (“[T]he period that the offer may be accepted,” within the
meaning of section 304.105, expires when the plaintiff rejects the offer), rev’d on other grounds, 167 S.W.3d 324
(Tex. 2005); Harris v. Mickel, 15
F.3d 428, 429 (5th Cir. 1994).  Under contract
principles, once an offer is rejected, it is terminated, and the rejecting
party cannot thereafter accept it; accordingly, the “period that the offer may
be accepted” under section 304.105 terminates when the offer is rejected.  See  Qwest Communications
Int’l, Inc., 114 S.W.3d at 41; Harris,
15 F.3d at 429.

          We hold that the trial court did not
err in awarding prejudgment interest for the reasons that Figueroa argues. We
overrule issue one in its entirety.

CONCLUSION

          We affirm the judgment of the trial
court.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.











[1]               Moreover, Figueroa prays only for a remand, not for a rendition.

 





[2]           Figueora does not challenge the excessiveness of the
damages awarded.  See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 773-74
(Tex. 2003) (providing that in reviewing excessiveness challenge, court
considers “all the evidence that bears on the challenged category of damages,
even if the evidence also relates to another category of damages” and that “if
more than one award in overlapping categories is challenged as excessive,”
court must “consider all the evidence that relates to the total amount awarded
in all overlapping categories to determine if the total amount awarded was
excessive.”).

 





[3]
              In
one sentence of her appellate brief, Figueroa states, “There was also no expert
testimony provided to inform the jury as to the alleged level of pain directly
attributable to the collision as opposed to the alleged level of pain directly
attributable to [Davis's] preexisting back injury.”  She does not brief this argument separately.  More importantly, Figueroa does not advise
where she preserved such a sufficiency challenge based on lack of expert
testimony, and we have not found it in her motion for new trial, her motion for
directed verdict, or in her objections at the charge conference.  In fact, the only sufficiency challenge based
on lack of expert testimony that we have located is that contained in her
motion for new trial, which complained solely that expert testimony was
required to prove Davis’s dental injuries. We thus do not address this
argument.  See Tex. R. App. P. 33.1(a)(1).





[4]           In his
appellee’s brief, Davis asks us to modify the prejudgment interest award.  However, he did not file a notice of appeal,
and we may thus not grant the relief that he requests.  See Tex. R. App. P. 25.1(c).





[5]
          In
his appellee’s brief, Davis contends that Figueroa produced no evidence of the
$3,000 offer.  However, Davis’s counsel’s
courtroom admission replaced the need to enter evidence of this fact.  See
Bowen v. Robison, 227 S.W.3d 86, 92 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied) (“A judicial admission is a formal waiver of proof
that dispenses with the production of evidence on an issue.”).





[6]
              Figueroa contends that that $3,000 offer remained
open, as a matter of law, even after Davis’s counteroffer, but it did not.  See Blackstone
v. Thalman, 949 S.W.2d 470, 473 (Tex. App.—Houston
[14th Dist.] 1997, no writ) (“A counteroffer constitutes a rejection, not an acceptance, of the
original offer.”).