Terry Jennings Justice, Dissenting
Because there is sufficient evidence to support the jury's malice finding and the trial court's award of exemplary damages to appellee, Shale Exploration, LLC ("Shale"), I respectfully dissent.
The majority agrees that the record contains evidence that appellants, Eagle Oil & Gas Company and Eagle Wes-Tex, L.P. (collectively, "Eagle"), wrongfully misappropriated Shale's trade secrets. And it even recognizes that Eagle went to great lengths to conceal its behavior by creating a new company to compete directly with Shale. Regardless, the majority reverses the trial court's judgment awarding Shale exemplary damages, based on the jury's malice finding, because there is no evidence that Eagle intended to injure Shale in a manner that is " 'independent and qualitatively different' from the compensable harms associated with its misappropriation of Shale's trade secrets." The majority's conclusion appears to be based on its observations that "Shale adduced no evidence of Eagle's conduct beyond the purchase of leases within the prospect-which defined Eagle's claim for misappropriation and lost profits" and Eagle's leasing activities did not thwart Shale's deal with Apache or prevent the drilling of wells in the prospect.
*287 In support of its holding, the majority relies on the Texas Supreme Court's opinion in Horizon Health Corp. v. Acadia Healthcare Co. , 520 S.W.3d 848 (Tex. 2017). However, Horizon Health actually supports upholding the jury's malice finding and exemplary damages under these circumstances. In Horizon Health , the court held that there was sufficient evidence to support the jury's malice finding against an individual defendant "in light of his participation in the scheme to form a business that would compete directly with" the company from which he misappropriated trade secrets, "using [that company's] trade secrets and proprietary information." Id. at 871.
Similarly, in this case, there is sufficient evidence to support the jury's malice finding. There is evidence from which a reasonable jury could infer that Eagle intended to specifically cause harm to Shale. Sam Tallis, who was the president of Shale, testified that he was informed by George Lucker, an agent of Montana Lease, that Montana Lease was acquiring leases in the prospect for Eagle. Further, there is evidence that Eagle specifically identified the target areas where Montana Lease sought leases, and Tallis testified that Lucker used Shale's prospect map to do so. Neither Eagle nor Montana Lease performed the title work at the courthouse that would be necessary to identify the multitude of mineral owners, yet they were able to secure more than 11,000 mineral leases in about a month and a half, even though it took Shale several months just to identify the mineral owners.
John Hughett, Eagle's expert, even admitted that Shale's prospect was unconventional and required a magnitude of contiguous acreage. Sid Greehey, an investor in Black Pearl, explained this was required because the drilling in the region needed to be done horizontally. Hughett further agreed that Eagle's own acquisition of leases within the prospect did not fit this pattern. And Tallis testified that Eagle's more limited acquisition of acreage was not large enough for drilling, but instead was designed to prevent Shale and its partners from drilling without first negotiating with Eagle. As he put it, "what they're doing is they're busting up our drilling units where they can hold us hostage." To date, Eagle has not drilled there or tried to sell the leases it purchased beyond advertising them at a tradeshow in August 2012.
There is also evidence from which a jury could reasonably infer that Eagle actively concealed its efforts to compete directly with Shale using Shale's stolen trade secrets. Eagle used a separate, newly-formed company with no apparent ties to it to conceal that it was the one acquiring mineral leases within Shale's prospect. The leases and their terms would not become a matter of public record until recorded at the courthouse, and the leases at issue were not assigned, in the public record, to Eagle Wes-Tex until July 2012. When Greehey initially contacted Pat Bolin, Eagle's chief executive officer, to request that he confirm or deny whether Eagle was leasing in the prospect, Bolin refused to do either, but instead stated that Eagle had the right to do so. Bill Fairhurst, a vice president of Eagle, specifically denied to Mike Looney, the president of Black Pearl Exploration, LLC who was in charge of marketing the prospect to potential business partners, that Eagle was leasing in Daniels County, despite knowing this to be false.
Here, a reasonable jury could have determined that Eagle, as Shale argues, "maliciously misused the playbook to harm Shale's leasing operations in the Jayhawk" and did so specifically with the intent "to disrupt Shale's deal with Apache." And it *288 was within the jury's province to resolve any controverted testimony and other evidence. Figueroa v. Davis , 318 S.W.3d 53, 60 (Tex. App.-Houston [1st Dist.] 2010, no pet.). Whether Eagle actually succeeded in thwarting Shale's deal with Apache, or preventing Apache from drilling in the Jayhawk, is irrelevant. The only consideration is whether Eagle "specifically intended" for Shale "to suffer substantial injury," not whether it succeeded in doing so. Horizon Health , 520 S.W.3d at 867.
The majority's holding is highly problematic because it requires a plaintiff seeking exemplary damages to not only demonstrate malice, but also that it sustained some compensable injury distinct from the damages it seeks to recover from its underlying misappropriation claim. This is contrary to the fundamental purpose of exemplary damages, which is not to compensate , but to punish. See ids="12383182" index="157" url="https://cite.case.law/sw3d/520/848/#p871">id. , 520 S.W.3d at 873 ("[C]ompensatory and exemplary damages serve different purposes; compensatory damages redress concrete losses caused by the defendant's wrongful conduct, while exemplary damages are aimed at deterrence and retribution.").
Accordingly, I would affirm the judgment of the trial court.