**Opinion issued May 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00553-CV

———————————

**BOUCHRA EID, Appellant**

**V.**

**MARIA POND, Appellee**

---

**On Appeal from the 53rd District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-GN-17-002018**

---

## MEMORANDUM OPINION

This contract-formation case asks whether a letter or a signed release, both of

which materially altered the terms of the preceding offer, constitutes an acceptance

---

[1]     The Supreme Court of Texas transferred this appeal from the Court of Appeals
for the Third District of Texas to this court. We are unaware of any relevant
conflict between precedent of that court and this court.

that creates an enforceable settlement agreement. Following an auto accident with appellee Maria Pond, appellant Bouchra Eid made a time-sensitive demand to State Farm, Pond's liability insurer, for the automobile policy's limits in exchange for Bouchra's settling all claims. Bouchra and State Farm then proceeded to exchange a series of communications that ended with Bouchra suing Pond for negligence. Pond secured summary judgment, arguing that a settlement agreement had been reached and that Bouchra breached its terms by filing and maintaining this lawsuit. Because Bouchra and State Farm never had a meeting of the minds on the material terms of the agreement, a contract did not form. We therefore reverse the summary judgment.

**Background**

Appellee Maria Pond collided her vehicle into another that was carrying appellant Bouchra Eid, her husband Maaz Eid, and her son Omar Eid. The collision allegedly injured each of the Eids. The Eids hired Andrew Traub as their attorney. In three separate letters, Traub informed Pond's liability insurer, State Farm, that he was representing Maaz, Omar, and Bouchra and that each would be making a "claim for damages." In three separate responses, State Farm Claim Specialist Laronda Benson responded to Traub acknowledging the representation and asking for more information.

2

Traub's April 11, 2017 letter to Benson on Bouchra's behalf laid out the terms of a settlement offer. The letter stated:

> [W]e hereby request a settlement in the amount of the policy limits . . . .
>
> **This is a Clear and Unequivocal Opportunity To Globally Settle This Case And Protect Your Insured From The Consequences Of A Verdict and Judgment In Excess Of The Limits of The Insurance Policies.**
>
> In exchange for a tender of policy limits, [Bouchra] will provide a complete release of your insured, with indemnification for all other claims which might be asserted by, through or under [Bouchra]. As part of any settlement agreement, your insured will be released from all liens arising by, through or under [Bouchra] . . . . This offer is intended as a complete and unconditional settlement of the case.
>
> This settlement offer is based upon the Stowers Doctrine . . . .
>
> We hereby make demand upon you for tender before the expiration of 14 days from your receipt of this demand.

Thirteen days later, on April 24, 2017, Benson responded:

> We received your . . . time limit demand for your client, Bouchra Eid. We have concluded the evaluation of your client's claim resulting from this loss. Based on the documentation provided, State Farm is willing to settle your client's claim for $100,000.00.
>
> This settlement is inclusive of all damages, known and unknown, and any liens, assignments or statutory rights of recovery.
>
> Please contact us once you have had an opportunity to review this offer.

Benson then sent Traub a "Release" that required Bouchra *and* Maaz to release all of their claims in exchange for $100,000.

Traub sent a responding fax the next day along with a copy of the release signed only by Bouchra—Maaz's signature line was removed altogether. The fax read, "I've attached Bouchra Eid's signed Release which does not include Mr. Eid. The release you faxed me included Mr. Eid, but the demand I sent was for Mrs. Eid alone. I assume his name was inadvertently included." Benson replied that "[t]he spouse also has to sign her release" and attached another copy of the release that had blank-signature lines for both Bouchra and Maaz.

Five days later, on May 9, 2017, Traub responded:

Our Stowers demand was for Mrs. Eid's claims alone. You rejected that demand by adding a new term to the agreement, namely that Mr. Eid also sign the release. As you know, this would have required him to give up his own, personal claims, which had not yet been asserted. In doing so, you've also rejected my client's release.

I sought to clarify that Mr. Eid's signature should not be required in my correspondence . . . , and you again rejected the Stowers demand by again insisting that Mr. Eid's signature was required on the release.

At this time, we will be filing suit and pursuing the full value of Mrs. Eid's claims, which will be in the millions, if not tens of millions.

Later that day, Bouchra filed suit against Pond, alleging negligence and negligence per se.

Benson called Traub nine days after the suit was filed and informed him that State Farm had changed its position and was willing to require only Bouchra to sign the release. Benson faxed Traub a release that included a signature line only for Bouchra and a note that read, "I was also given permission to accept the release you

4

have already forwarded." State Farm then mailed Traub a check for $100,000, but he returned it.

Pond then filed a breach-of-contract counterclaim, alleging that a settlement agreement had been reached and that Bouchra breached the terms of that agreement by filing and maintaining this lawsuit. Bouchra filed her answer and sought a declaratory judgment that no contract was formed. After severing and abating Bouchra's negligence and negligence-per-se claims, the trial court requested each party to submit summary-judgment motions on the contract issue. After reviewing the parties' briefs, the trial court granted summary judgment in favor of Pond. The trial court then issued a declaratory judgment that there was a valid and enforceable settlement agreement between the parties under which Bouchra released all her claims and that Bouchra breached that agreement by filing and maintaining this lawsuit. The trial court also awarded Pond attorney fees. Bouchra appeals.

**Analysis**

Bouchra argues that the trial court improperly granted summary judgment because she and State Farm never formed a contract. She argues alternatively that, even if a contract was formed, the trial court erred because State Farm either repudiated the contract or breached its terms. Last, she maintains that the trial court erroneously awarded Pond attorney fees. Because we conclude that State Farm and Bouchra did not form a contract, we do not reach Bouchra's alternative argument.

5

We review a trial court's summary-judgment order de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When we review competing motions for summary judgment, the proper course of action is to either affirm or render judgment for the party whose motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex. 1984). In evaluating whether a contract was formed, we apply objective standards and look to the parties' communications and the surrounding circumstances. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150–51 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When those communications are in writing, the contract-formation question is primarily a question of law. *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 104 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also See Figueroa v. Davis*, 318 S.W.3d 53, 68–69 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

A valid contract requires an offer, acceptance, meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *Davis*, 470 S.W.3d at 104. Like she did in her motion for summary judgment, Pond contends that State Farm accepted the original offer made in the demand letter when Benson, State Farm's claim specialist, responded to the demand letter on April 24, 2017.

A valid acceptance requires strict compliance with the offer's terms. *APMD Holdings, Inc. v. Praesidium Med. Prof'l Liab. Ins. Co.*, 555 S.W.3d 697, 707 (Tex.

6

App.—Houston [1st Dist.] 2018, no pet.). A purported acceptance that changes the material terms of a proposed offer is not an acceptance but a counteroffer. *Davis*, 470 S.W.3d at 105. A counteroffer acts to terminate the original offer. *Id.* Accordingly, once an offeree makes a counteroffer, she cannot later accept the original offer. *See Davis*, 318 S.W.3d at 104–05.

After receiving the demand letter, Benson responded with a counteroffer that acted to reject and terminate the original demand-letter offer. Benson's April 24, 2017 letter acknowledged that State Farm "received [the] time limit demand for your client" and noted that, after conducting its own investigation, "State Farm is willing to settle your client's claim for $100,000." Benson ended her letter by stating, "Please contact us once you have had an opportunity to review this offer." The release Benson sent three days later materially altered the demand letter's terms. Instead of State Farm tendering payment in exchange for Bouchra's release of her claims, like the demand letter specified, this release required State Farm to tender payment in exchange for the release of Bouchra's and Maaz's claims—an effective doubling of State Farm's contractual benefit. This was a material change to the terms of the demand-letter offer, which never suggested that Maaz would release his claims. Through her written communications with Traub, Benson advanced a counteroffer that terminated the original offer and State Farm's ability to accept that original offer.

7

Even when we consider Benson's April 24, 2017 letter independently of the release she sent three days later, the letter's language makes clear that Benson was making a separate offer and not unconditionally accepting the terms of the demand letter. According to the demand letter, State Farm could accept the offer only by "tender[ing]" the "policy limits, including any available excess or umbrella policies" within "14 days from [State Farm's] receipt of [the] demand." Payment is a material term of a settlement agreement, and acceptance must be in strict compliance with the terms of the original offer. *Padilla v. LaFrance*, 907 S.W.2d 454, 460–61 (Tex. 1995); *APMD*, 555 S.W.3d at 707. Benson's letter did not tender payment but simply announced State Farm's "willing[ness] to settle [the] claim for $100,000." Further, Benson's letter did not indicate whether $100,000 represented the policy limits or if that amount accounted for any excess or umbrella policies—a potentially significant omission. *See Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 369 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (describing when duty to disclose arises and when failure to disclose amounts to false misrepresentation).

The April 24, 2017 letter's failure to comply with the demand letter's required method of acceptance and silence on whether $100,000 reflected the policy limits—including excess and umbrella policies—were alterations to material terms of the demand letter that make clear the letter was, as Benson acknowledged in the letter's closing sentence, a separate "offer" and not an acceptance.

8

Pond argues, however, that because Bouchra signed and returned the release Benson sent three days after the April 24, 2017 letter, Bouchra accepted its terms and therefore formed a binding agreement. We disagree. Although Bouchra's act of signing and returning the release reflected her intent to be bound by its terms, *see Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007), Pond's argument ignores the fact that Bouchra completely redacted all mention of Maaz from the release. Just as State Farm's inclusion of Maaz as a releasor was a material change that constituted a counteroffer, so too was Bouchra's redaction of Maaz as a releasor. *See Davis*, 470 S.W.3d at 104–05. And upon receiving the counteroffer, Benson made clear that State Farm was not going to accept the release signed by Bouchra alone when she rejected it and returned it with blank-signature lines for Bouchra and Maaz, stating, "The spouse also has to sign her release." By resending a blank release with signature lines for Bouchra and Maaz, Benson again made a counteroffer to settle for the release of Bouchra's and Maaz's claims.

We are not persuaded by Pond's argument that the request for Maaz's signature was an immaterial change to the terms of the demand letter. Pond contends that the purpose of having Maaz sign the agreement was only to make sure that he released any derivative claims, like loss of consortium, that would have been related to Bouchra, and not for the purpose of securing the release of his personal claims. This argument is belied by the release's plain language. We must look to the parties'

9

communications objectively to determine their intent. *Beverick*, 186 S.W.3d at 150–51. Had Maaz signed the release, he would have released Pond from all claims "known and unknown, both to person and property . . . which have resulted or may in the future develop from [the] accident." This language plainly contemplates much more than just his release of derivative claims related to Bouchra.

\* \* \*

This case involves a series of counteroffers that ended without agreement and a letter from Bouchra informing State Farm that, after its repeated rejections of her offers, she was going to sue. Accordingly, the trial court erred when it granted summary judgment and held that an enforceable agreement existed and that Bouchra breached that agreement by filing and maintaining this lawsuit.

## Conclusion

We reverse the judgment of the trial court, render summary judgment for Bouchra on the contract-formation issue, and remand this case to the trial court for proceedings consistent with this opinion.

Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

10