Opinion issued September 10, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00665-CV

———————————

**THE GULF COAST CENTER, Appellant**

**V.**

**DANIEL CURRY JR., Appellee**

**On Appeal from the 56th Judicial District**
**Galveston County, Texas**
**Trial Court Case No. 16-CV-0781**

## MEMORANDUM OPINION ON REHEARING

This is a negligence case arising out of a bus-pedestrian accident. After Daniel Curry was struck by a van operated for public transport by The Gulf Coast Center, he sued Gulf Coast, a governmental entity, for his injuries, medical expenses, and physical impairment. The case went to trial, and the jury found that Curry was

entitled to $216,000 in damages. The trial court entered judgment on the verdict, and Gulf Coast appeals, contending that the trial court erred in entering the damages award because (1) as a unit of local government, the Texas Tort Claims Act (TTCA) limits its liability for damages at $100,000; (2) the evidence is legally and factually insufficient to support the jury's findings in favor of Curry on past and future medical expenses and past and future impairment; and (3) admission of Curry's billing affidavits constitutes reversible error.

On rehearing, Gulf Coast contends that our opinion of February 6, 2020 does not address its challenge to the trial court's admission of Curry's medical expense affidavits. We deny Gulf Coast's motion for rehearing but withdraw our original opinion and substitute this opinion in its place. We dismiss Gulf Coast's motion for rehearing en banc as moot. Our judgment remains unchanged.

We affirm.

## BACKGROUND

In February 2016, Curry worked as a manager at a sandwich shop in Texas City and as a dishwasher at another restaurant nearby. To get from one job to the other, he had to cross a busy intersection.

After finishing his dishwashing shift one afternoon, Curry headed to the sandwich shop for lunch. He pushed the button at the pedestrian crosswalk and waited until the traffic light turned green and the crosswalk signal indicated it was

2

safe to cross, then proceeded into the intersection. At the same time, a Gulf Coast bus was making a right turn at the corner and struck Curry's left side. As a result of the impact, Curry landed in the street on his right side. According to one witness, Curry was hit with so much force that he landed in the middle of the street, approximately a lane away from the bus. He was missing a shoe and had so much pain in his left knee that he could barely walk.

**Curry's injuries**

An ambulance arrived and transported Curry to Mainland Medical Center. At the emergency room, Curry reported that the pain in his left knee radiated up to his hip and down to his ankle. Curry was diagnosed with a knee sprain. On discharge, he was given crutches and instructed to consult with an orthopedic surgeon.

Curry saw Dr. Reuben, an orthopedic surgeon, two weeks later. By the time Curry met with Dr. Reuben, he had pain in both knees, his left hip, his lower back, and his shoulders. Dr. Reuben, who has thirty years' experience as an orthopedic surgeon in private practice, diagnosed Curry's lower back pain as arising from an injury to a disk. He diagnosed Curry's shoulder pain as bilateral impingement syndrome—a pinching sensation caused by inflammation in the muscle and shoulder joints—which, Dr. Reuben explained, is a common condition in individuals who have been involved in auto or auto-pedestrian collisions.

After seeing Dr. Reuben, Curry continued to experience back pain and visited an internist. The internist prescribed non-steroidal anti-inflammatories and pain medication. Following Dr. Reuben's recommendation, Curry also underwent two months of physical therapy. Curry continued to experience pain and visited Dr. Reuben again. Dr. Reuben sent Curry for MRIs to assist in diagnosis. The MRIs showed that Curry had lumbar disc herniation and annular bulges. The MRI report for Curry's shoulder explained that Curry had moderate acromioclavicular (AC) impingement and small joint effusion.

Curry told the jury that he had constant radiating pain down his legs—pain that he would not put "on his worst enemy." He also testified that as a result of his pain, he could no longer engage in certain activities like doing dishes and putting up stock at work, going for walks around the park, helping friends work on their vehicles, and helping friends move.

**Gulf Coast's status as a governmental entity**

Curry's live pleadings allege that Gulf Coast

is a "governmental unit" and was such on the day of the incident made the basis of this lawsuit under Title 5, Chapter 101 of the Texas Civil Practice & Remedies Code. At the time of the incident giving rise to this lawsuit, Danny L. Auzenne, an employee of The Gulf Coast Center, was operating a Gulf Coast Center vehicle in the course and scope of Azuenne's employment with The Gulf Coast Center and Auzenne was performing a governmental function for Defendant at all times relevant to this lawsuit. The Gulf Coast Center would be personally liable for its negligent acts if it were a private person. The acts for which Defendant

4

has been sued gave rise to a waiver of immunity from suit and from liability under sections 101.021(1) of the Texas Civil Practice & Remedies Code.[1] Defendant has no valid exceptions to waiver of immunity from liability in this case under Title 5, Chapter 101 of the Texas Civil Practice & Remedies Code.

Gulf Coast had its general counsel testify to the jury as to Gulf Coast's status as a governmental entity. She told the jury that Gulf Coast serves Galveston and Brazoria Counties as a public transportation provider for all residents and as a community center that provides mental health, disability, and chemical dependency services for indigent residents. She described Gulf Coast as "an agency of the State, unit of government. Some people try to say we're nonprofit, but we're not."

---

[1] Pertinent to this case, this limited waiver of governmental immunity from liability applies to personal injury

> proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:
>
> (A) the . . . personal injury . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2)    personal injury . . . so caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

**Jury verdict and judgment**

The jury found that Gulf Coast was negligent and 100% responsible for causing Curry's injuries. It further found that Curry was entitled to the following compensation:

| | |
|---|---|
| Physical pain sustained in the past. | $25,000 |
| Physical pain that, in reasonable probability, will be sustained the future. | $25,000 |
| Physical impairment sustained in the past. | $25,000 |
| Physical impairment that, in reasonable probability, will be sustained in the future. | $35,000 |
| Medical care expenses incurred in the past. | $36,000 |
| Medical care expenses that, in reasonable probability, will be incurred in the future. | $70,000 |

In his motion for judgment on the verdict, Curry argued that Gulf Coast was subject to the $250,000 liability limit set forth in TTCA section 101.023(a), which applies to units of state government. In its own post-verdict motion, Gulf Coast submitted evidence of its status as a unit of local government subject to the $100,000 liability limit set forth in TTCA section 101.023(b). The trial court denied Gulf Coast's motion and signed a judgment awarding $216,000, the total amount of compensatory damages found by the jury.

**DISCUSSION**

**I.      Immunity from Liability Under the Texas Tort Claims Act**

Gulf Coast first contends that the trial court erred in entering judgment on the verdict because, as a unit of local government, it is entitled to have any damages award capped at $100,000. *See* TEX. CIV. PRAC. & REM. CODE § 101.023(b).

**A.      Applicable law and standard of review**

Under the common law, immunity from liability and immunity from suit are discrete aspects of governmental immunity. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012). Absent waiver, immunity from liability protects governmental entities from judgments; immunity from suit protects them from the burdens of litigation altogether. *Id.*; *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). "Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

The TTCA provides a limited waiver of governmental immunity—either immunity from suit or immunity from liability—under specified circumstances. Gulf Coast does not assert that it is immune from suit, only that, as a unit of local government, it is immune from liability in excess of $100,000. *See* TEX. CIV. PRAC. & REM. CODE § 101.023(b); *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 840 (Tex. 2018) (section 101.023 "limits only the liability of a governmental

7

unit—it does not shield it from suit"); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 698 (Tex. 2003) (damages caps, such as those provided under section 101.023, that "insulate public resources from the reach of judgment creditors" demonstrate Legislature's intent to waive immunity from suit); *Belehu v. Lawniczak*, 437 S.W.3d 913. 916 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (reversing summary judgment because evidence failed to conclusively prove that bus driver who was employee of private corporation under contract with county transit authority was entitled to limitation of liability under section 101.023(b)).

A governmental unit must affirmatively plead immunity from liability or it is waived. *Davis v. City of San Antonio*, 752 S.W.3d 518, 519 (Tex. 1988); *Kinnear v. Tex. Comm'n on Hum. Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam). Gulf Coast pleaded that it was immune from liability under TTCA section 101.023 and thus raised the affirmative defense. *See Davis*, 752 S.W.2d at 519. However, it did not ask for a jury finding on its affirmative defense. As a result, Gulf Coast is entitled to the limitation of liability set forth in section 101.023(b) only if the evidence adduced at trial conclusively proves its status as a unit of local government. *See* TEX. R. CIV. P. 279 (party waives independent ground of recovery or defense by failing to seek finding unless evidence conclusively establishes claim or defense); *Williams v. Jackson*, No. 01-07-00850-CV, 2008 WL 4837484, at *5 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (mem. op.).

8

In determining whether conclusive evidence exists, we must review all evidence supporting the jury's verdict as true and reject all contrary proof if a reasonable jury could. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Gulf Coast characterizes the evidence of its status as a governmental unit as undisputed, but even so, undisputed evidence is conclusive only if reasonable people could not differ in their conclusions, a determination that depends on the facts of each case. *See id.* at 816.

## B. Analysis

Gulf Coast contends that the trial court erred in applying the $250,000 cap that TTCA section 101.023(a) makes applicable to the state government instead of the $100,000 cap that applies to units of local government. Curry's live pleadings effectively stipulate that Gulf Coast is a governmental unit, but do not address whether it is a unit of state government or local government. Gulf Coast's general counsel's testimony provided the only evidence addressing the issue at trial. She explained that Gulf Coast was a public transportation provider and a community mental health center for Galveston and Brazoria Counties and described Gulf Coast as an "agency of the State, unit of government."

This testimony does not answer whether Gulf Coast is a unit of local government subject to the $100,000 cap or a unit of state government subject to the $250,000 cap. *See* TEX. R. CIV. P. 101.023(a), (b). In its brief, Gulf Coast explains

9

that it was formed under the authority of section 534.001of the Texas Health and Safety Code, which declares that a county or counties "may establish and operate a community center" to provide mental health services and intellectual disability services and provides that community center formed under that section is "an agency of the state, a governmental unit, and a unit of local government, as defined and specified by" TTCA Chapters 101 and 102. TEX. HEALTH & SAFETY CODE § 534.001. However, Gulf Coast did not obtain a stipulation from Curry on this issue or adduce any evidence at trial concerning its formation under section 534.001. We also note that section 534.001's plain language does not expressly authorize Gulf Coast's public transportation function.[2] As a result, it cannot relieve Gulf Coast of its burden to adduce evidence proving its specific governmental status to the jury.

Because Gulf Coast failed to conclusively establish its status as a unit of local government and failed to obtain an affirmative finding from the jury on that issue, we hold that the trial court did not err in awarding damages in excess of $100,000 but less than $250,000.

---

[2]    Section 534.001authorizes Gulf Coast's function as a provider of mental health, disability, and chemical dependency services for indigent residents, but it does not, on its face, provide authority for Gulf Coast's function as a public transportation provider for all residents. *See id.* § 534.001(f) ("Each function performed by a community center under this title is a governmental function if the function is required or affirmatively approved by any [state or federal] statute" or regulation). Gulf Coast's performance of the public transportation function is what caused Curry's injury.

## II. Legal and Factual Sufficiency of the Evidence Supporting the Jury Findings for Past and Future Medical Expenses and Physical Impairment

Gulf Coast next contends that trial court erred in entering judgment on the verdict because the evidence is legally and factually insufficient to support the jury's findings for past and future medical expenses and past and future physical impairment.

### A. Applicable law and standard of review

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. "Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *City of Keller*, 168 S.W.3d at 822. We credit favorable evidence if a reasonable juror could and disregard contrary evidence if a reasonable juror could not. *Id.* at 827.

In a factual sufficiency review, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the

11

evidence as to be clearly wrong and unjust. *Estrada v. Cheshire*, 470 S.W.3d 109, 119 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). When the appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Under either type of sufficiency challenge, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *City of Keller*, 168 S.W.3d at 819–20).

Texas courts defer to the factfinder's discretion on the issues of whether to award damages and how much to award. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003). A jury has broad discretion to award damages within the range of evidence presented at trial. *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 408 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *City of Houston v. Harris Cty. Outdoor Advert. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The evidence need not show precisely how

the jury arrived at the specific amount awarded. *MEMC Pasadena*, 472 S.W.3d at 408; *see Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied); *see also Pipgras v. Hart*, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth 1992, writ denied) (explaining that a jury often must "extrapolate an award of future medical damages from proof of other matters"), *quoted in Day v. Domin*, No. 05-14-00467-CV, 2015 WL 1743153, at *5–6 (Tex. App.—Dallas April 16, 2015, no pet.) (mem. op.). A jury is not bound to award the exact amount requested by the plaintiff, and it does not have to rely solely on an expert's opinion in calculating damages. *MEMC Pasadena*, 472 S.W.3d at 408 (quoting *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 606 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). The jury's findings, however, must find support in the evidence. *Salinas v. Rafati*, 948, S.W.2d 286, 289 (Tex. 1997); *MEMC Pasadena*, 472 S.W.3d at 408.

## B.    Propriety of award for past medical expenses

Gulf Coast argues that the evidence is legally and factually insufficient to support the findings that Curry's medical expenses were reasonable and necessary and that the collision caused Curry to incur those medical expenses. *See Texarkana Mem'l Hosp. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997). According to Gulf Coast, the testimony of Curry's treating orthopedic surgeon, Dr. Reuben, is no evidence because he is unqualified to opine on medical expenses other than those

13

relating to his treatment of Curry. Gulf Coast specifically targets Dr. Reuben's testimony relating to the charges by EMS, two emergency rooms, a radiologic clinic, and an internist.

An expert witness may be qualified on the basis of knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would "assist the trier of fact" in understanding the evidence or determining a fact issue. *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing TEX. R. EVID. 702). Whether an expert witness is qualified under Rule 702 lies within the trial court's sound discretion. *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996). A physician need not practice in the particular field about which he is testifying so long as he can demonstrate that he has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify him to give an opinion on that subject. *Cornejo*, 446 S.W.3d at 121 (citing *Roberts v. Williamson*, 111 S.W.3d 113, 121–22 (Tex. 2003))

Dr. Reuben, a board-certified orthopedic surgeon with over 30 years of experience, testified that to prepare for his testimony, he reviewed Curry's medical records, medical bills, x-rays, and MRIs. He explained that he has extensive experience caring for patients who have been injured in motor vehicle collisions. Dr. Reuben also explained that he was familiar with the reasonable and necessary

14

charges for the diagnostic, physical therapy, and radiology services that Curry received because his medical office used to provide those services.

Gulf Coast contends that Dr. Reuben's testimony is conclusory, but the record does not support this contention. Dr. Reuben described each step that the hospital took in evaluating Curry's condition and the diagnostic procedures it used, including performing a physical examination and taking x-rays of the pertinent body parts, and he confirmed that these procedures were customary and necessary. Dr. Reuben testified that the anti-inflammatory medication prescribed to Curry at the hospital was warranted because of the inflammatory response that occurs in the body after an injury. In addition, he confirmed that the medications that the internist prescribed for Curry were warranted given his pain.

Dr. Reuben's extensive experience with patients injured in circumstances similar to those endured by Curry and his familiarity with the non-orthopedic services used for diagnosis and treatment of those individuals support the trial court's exercise of discretion in admitting his testimony on both the reasonableness and necessity of the charges for those services.

In contending that legally and factually insufficient evidence supports the jury's findings that the collision caused Curry's past medical expenses, Gulf Coast points to evidence that Curry had chronic low back pain before the collision and that,

15

on the day of the collision, Curry complained only of knee pain. The record, however, contains controverting evidence that supports the jury's findings.

Dr. Reuben acknowledged that Curry's medical records showed that he had a history of minor back pain but noted that later diagnostic testing revealed that Curry had a herniated disk that, he believed, Curry did not have before the collision. Dr. Reuben also considered the difference between Curry's prior complaints of back pain noted in his medical records and the radiating pain he reported following the collision. Dr. Reuben opined that radiating pain was due to a disk herniation, and that if Curry had a disk herniation before the collision, he would have experienced radiating pain but did not. In his testimony, Curry confirmed that his pain changed after he was hit by the bus. Before, he explained, his back pain would come and go, but after the incident, he had constant radiating pain down his legs. He commented, "I wouldn't put any of this pain on my worst enemy."

With respect to the knee pain Curry reported immediately after the incident and the additional shoulder and back pain he reported two weeks later, Dr. Reuben explained that pain from some injuries may manifest later because the pain is from the body's inflammatory response to injury, which may take more time to develop.

This testimony is sufficient to support a causal connection between Gulf Coast's negligence and Curry's medical expenses. In challenging the factual sufficiency of the evidence, Gulf Coast points to its medical expert's controverting

16

testimony, but the jury had the prerogative to believe Dr. Reuben's testimony. *See Figueroa*, 318 S.W.3d at 60 (citing *City of Keller*, 168 S.W.3d at 819–20). We hold that the evidence is legally and factually sufficient to support the award for past medical expenses.

### C. Propriety of award for future medical expenses

Gulf Coast argues that no evidence supports the jury's future damages finding because there was no evidence Curry is likely to require medical care in the future and of the cost of such care. To sustain an award of future medical expenses requires proof that in all reasonable probability, future medical care will be required and the reasonable cost of that care. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Generally, "the award of future medical expenses rests within the sound discretion of the jury." *Id*. The jury can determine the amount of future medical expenses and care based on the plaintiff's injuries, the medical care rendered, the progress toward recovery, and the injured party's condition at the time of trial. *Finley v. P.G.*, 428 S.W.3d 229, 233 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Rosenboom Mach. & Tool*, 995 S.W.2d at 828; *see also Day*, 2015 WL 1743153 at *6 (noting that jury often must extrapolate amount for future medical damages from proof of other things, such as past medical treatment); *Whole Foods Mkt. Sw. v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("The reasonable value of

future medical care may be established by evidence of the reasonable value of past medical treatment."). Appellate courts are reluctant to disturb a factfinder's conclusion regarding an award of future medical expenses. *Finley*, 428 S.W.3d at 234; *see also Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied) ("Because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages." (internal footnote omitted)).

Dr. Reuben testified that if Curry's low back pain continued, he would need up to two additional epidural steroid injections. If those did not resolve the issue, Dr. Reuben would offer to perform the surgery. Curry told the jury that he continued to have pain flare up in his left knee, left pelvic area, and lower back, and that he would undergo the injections to address his continuing issues. Curry also noted that the physical therapy helped his shoulders "feel a lot better"; he testified, "I got more movement in my shoulders and I was able to lift certain weights with my left hand, but not with my right."

Based on Curry's past medical expenses, Dr. Reuben's testimony, and Curry's testimony that he continued to have pain flare up two years after the accident and planned to submit further medical treatment, the jury could properly consider it reasonably probable that Curry would need, in addition to the injections, physical

18

therapy as well as MRIs and other diagnostic tools to evaluate his progress. We hold that the evidence is legally and factually sufficient to support the future medical expenses award.

### D.     Admission of Medical Expense Affidavits

Gulf Coast argues that the trial court erred in admitting Curry's medical expense affidavits at trial because it timely filed counteraffidavits pursuant to Civil Practice and Remedies Code Chapter 18. To obtain reversal of a judgment based upon the improper admission of evidence, Gulf Coast must show that the trial court committed error and that the error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). Error based on the admission of evidence is generally not reversible unless the appellant can demonstrate that the judgment turns on the particular evidence excluded or admitted. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Under Chapter 18, a plaintiff can prove up the reasonableness and necessity of medical expenses through a medical provider's affidavit. TEX. CIV. PRAC. & REM. CODE § 18.001. But if the opposing party timely files a sufficient counteraffidavit, the plaintiff cannot rely on the medical provider's affidavit; he must prove the reasonableness and necessity of the expenses by expert testimony at trial. *See Liang v. Edwards*, No. 05-15-01038-CV, 2016 WL 7163841, at *2 (Tex. App.—Dallas

Nov. 23, 2016, no pet.) (mem. op.) (citing *Hong v. Bennett*, 209 S.W.3d 795, 799 (Tex. App.—Fort Worth 2006, no pet.)).

After Gulf Coast timely filed a counteraffidavit, Curry presented Dr. Reuben's testimony to prove up the reasonableness and necessity of his medical expenses. In addition, Curry sought admission of the affidavits he secured under Chapter 18. When Curry proffered the affidavits, Gulf Coast objected that the affidavits were not "properly proven as reasonable and necessary," and they were admitted over Gulf Coast's objection.

Assuming without deciding that Gulf Coast's objection was sufficient to preserve its complaint and that the affidavits were admitted in error, Gulf Coast has not demonstrated that the error, if any, requires reversal. Unlike *Liang*, where the award of past medical expenses turned on the erroneously admitted affidavits because there was no other expert testimony to support the damage award, Curry's medical expense affidavits, at most, were cumulative of Dr. Reuben's testimony. *See* 2016 WL 7163841, at *5. And because Dr. Reuben reviewed the expense records accompanying the affidavits to provide the basis for his opinion, those records were properly in evidence. "The erroneous admission of evidence that is merely cumulative of properly admitted evidence is harmless." *Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998); *see Benson v. Chalk*, 536 S.W.3d 886, 905 (Tex. App.—

20

Houston [1st Dist.] 2017, pet. denied). We therefore hold that any error in the admission of the medical expense affidavits does not warrant reversal.

### E. Propriety of awards for past and future physical impairment

Gulf Coast complains that neither the $25,000 award for physical impairment sustained in the past nor the $35,000 for physical impairment that in reasonable probability, will be sustained in the future is supported by legally or factually sufficient evidence. "Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 554 (Tex. App.—Fort Worth 2006, pet. denied). "[L]oss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment." *Golden Eagle Archery*, 116 S.W.3d at 772. A plaintiff generally must show that his physical-impairment damages are substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity. *Figueroa*, 318 S.W.3d at 64; *see Golden Eagle Archery*, 116 S.W.3d at 772 (indicating it would be appropriate to instruct jury that it may consider loss of enjoyment of life as factor, but also that effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that plaintiff should not be compensated more than once for each element of loss or injury).

"The process of awarding damages for amorphous, discretionary injuries" like this one "is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.). "Once the existence of some pain, mental anguish and disfigurement has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact finder." *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80 (Tex. App.—Corpus Christi 1992, writ denied), *quoted in Figueroa*, 318 S.W.3d at 62.

Curry testified that after being hit by the Gulf Coast van, he had trouble lifting dishes and putting up stock delivered to the restaurant. The injuries left him unable to take short walks around the park or help friends with moving or working on their vehicles. After about a year of physical therapy, his shoulders improved and he was able to lift some weights with his left hand, but not with his right. This testimony shows that the pain and injuries Curry suffered as a result of the collision has limited his ability to participate in the social activities he used to enjoy with his friends. Curry further testified that he continues to suffer pain two years after the accident, pain serious enough that he expressed willingness to undergo another epidural steroid injection. This testimony constitutes legally and factually sufficient evidence to support the jury's award for past and future physical impairment.

## CONCLUSION

We affirm the judgment of the trial court. All other pending motions are dismissed as moot.


Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.